Worden, J.
Action by the appellees against the appellant, to recover possession of certain real estate in the city of Indianapolis. An answer, reply, and counter-claim were filed.
The court below at general term held that a demurrer to the second paragraph of the replication to the second paragraph of answer should have been overruled; and that a demurrer to the counter-claim should have been sustained.
Without setting out these various pleadings in full, we gather from them the following facts, on which the correctness of the ruling below at general term depends :
In the year 1850 John W. Foudray died intestate, seized in fee simple of certain real estate iu Marion county, Indiana, including that in controversy in this suit, leaving a widow and two children, viz.: John E. Foudray, and Milton Foudray.
*285 The widow of John W. Foudray was entitled to dower in the estate mentioned; but as she is deceased, and as the partition hereinafter mentioned was made subject to her right of dower, her dower interest is of no importance'in the case..
The real estate left by John W. Foudray remained undivided until after the death of his son, Milton Foudray, who died intestate, in the year 1855, leaving his widow, Julia A. Foudray, and an only child, Mary E. Foudray, daughter of said Milton and Julia A., the said Mary E. having intermarried with William T. Akins, and being- the female plaintiff in the action.
Julia A. Foudray, the widow of Milton, subsequently intermarried with Nathaniel E. Lindsay.
After the intermarriage of her mother with Lindsay, Mary E. Foudray, then a minor, by David Y. Cully, her guardian, filed her petition in the court of common pleas of Marion county for the partition of the real estate of which John W. Foudray died seized as above stated, making' parties defendants thereto said John E. Foudray, and Nathaniel R. Lindsay and Julia A. Lindsay, formerly Julia A. Foudray, and such proceedings were thereupon had in that court, as that one-half in value of the land ivas set apart to John E. Foudray, one-quarter to Mary E. Foudray, and one-quarter to Julia A. Lindsay, all subject to the dower above mentioned.
The portion set apart to Julia A. Lindsay is the property in controversy in this action.
The judgment of the court confirming the report of the commissionei’s making the partition, so far as the part assigned to Julia A. Lindsay is concerned, is as follows, viz. r
“It is therefore ordered, adjudged and decreed by the court, that said Julia A- Lindsay, her heirs and assigns forever, do have, hold, possess and enjoy the premises so set off and assigned to. her, free from any and all claim or demand whatever of the said John E. Foudray or Mary E. Foudray or either of them, and any and all persons claim *286 ing from or under them or either of them, but subject to the dower of said Martha Foudray, widow of John W - Foudray, deceased.’ ’ The same judgment was rendered, mutatis mutandis, in respect to the other shares.
Afterward, in January, 1864, said Nathaniel R. Lindsay and Julia A., his wife, executed a warranty deed for the premises thus set apart to her, and in controversy herein, to said David. Y. Cully, for the consideration of $4,000. And, in November of the same year, the plaintiff herein, then Mary E. Foudray, she having then arrived at the age of twenty-one years, executed a deed for the premises thus set apart to her mother, to said Cully, in the following terms : “This indenture witnesseth, that Mary E. Foudray, of Marion county, State of Indiana, in consideration of five dollars to her paid by David V. Cully, the receipt whereof is hereby acknowledged,, doth hereby sell, convey, release and forever quitclaim to said David V. Cully, his heirs and assigns forever, the following real estate in the city of Indianapolis, Marion county, and State of Indiana, described as follows, to wit(description) “together with all the privileges and -appurtenances to the same belonging.”
Afterward, in September, 1865, Cully, by warranty deed and for the consideration of $8,000, conveyed the premises to Avery, the defendant herein. In 1869, and before the bringing of this suit, Julia A. Lindsay died, leaving her said husband surviving.
The following allegations are contained in the counterclaim, viz.: “That at and before the time of the execution ■of said, conveyance” (the conveyance from Lindsay and wife to Cully), “the said Mary E. Foudray was fully informed of her supposed interest apd right in and to said l’eal estate, as daughter of Milton and Julia A. Foudray, and of the execution of said conveyance by her said mother, and at the time consented fully and freely to said conveyance ; and particularly, that said Nathan R. Lindsay did in *287 form her of her said supposed rights, and of said convey.anee ; and that said consideration therefor, to wit, the sum of four thousand dollars, was to be paid, and Avas paid, to said Julia A. Lindsay ; that said Nathan R.Lindsay did ask her consent to such transaction before the execution of said deed of conveyance, and before becoming himself liable upon any covenants of warranty of title in said deed contained ; that the said Julia A. Lindsay did ask and request her consent to such transaction before the execution of the same, and before she received the said consideration therefor; that said David Y. Cully did request the consent of said Mary E. Eoudray to such conveyance, and to the payment of the said •Julia A. Lindsay of said consideration therefor; and that said Mary E. Eoudray did consent to such conveyance, and ■did consent that the consideration therefor be paid to hex-said mother, she, the said Mary, being fully advised of and well knowing her said supposed rights in said premises, the said consideration paid- by said Cully to her said mother, and that said consideration was paid for a conveyance in fee simple, and that said conveyance was of the fee simple to said real estate ; that said sum of four thousand dollai-s was so.paid by said Cully to said Julia A. for' the conveyance as aforesaid, and with the consent and approval of said Mary E. Foudray; that aftenvard, to wit, on the 7th day •of November, 1864, the said Mary E. Foudray, being then •of full age of twenty-one years and unmarried, did, for the purpose of signifying her consent to the said conveyance by her said mother to said Cully, and for the purpose of conveying any and all interest present or expectant in said premises, and of releasing said premises from any claim or demand of hers, did sign, seal, deliver and acknowledge, to said Cully, her certain deed of conveyance thereof.” (The deed hereinbefore mentioned.) * * * “That said sum so paid by said Cull}'' to Julia A. Lindsay was by her retained, used and controlled during the remainder of her life, free from the influ *288 enco or control of her said husband, and was used by her in charities, in the aid of soldiers and hospitals, and for her own benefit; that on the-day of--, 18 — , the said Julia departed this life; that on said day of her death there was remaining unexpended of said sum about thirteen hundred dollars ; that her said husband, Nathan R. Lindsay, did inform the said Mary of the source from which said sum so remaining was derived, and did pay to said Mary all of said thirteen hundred dollars, and that said Mary, being thus informed, did accept said sum.”
On the foregoing facts the court below, at general term, held, by its decision upon the rulings on the demurrers, that the property belongs to the plaintiff Mary E. Akins; and in this conclusion we fully concur.
We proceed to the consideration of the case, first, without reference to the supposed estoppel arising out of the alleged acts of the plaintiff, and will consider the question of estoppel afterwards.
When John W. Foudray died, his land descended equally to his two sons, John E. and Milton, subject to the dower of his widow'.
When Milton died, however, the statute of 1852 had taken effect, and by it his share of the land descended equally to his widow and daughter, there being but one child. 1 R. S. 1876, p. 412, sec. 23. The 18th section of the same statute provides, that “If a widow shall marry a second or any subsequent time holding real estate in virtue of any previous marriage such widow may not, during such marriage, with or without the assent of her husband, alienate-such real estate, and if, during such marriage, such widow shall die, such real estate shall go to her children by the-marriage in virtue of which such real estate came to her, if' any there be.”
Julia A. Foudray, afterwards Julia A. Lindsay, held the-property in controversy, in virtue of her marriage with- *289 Milton Eoudray, and she held it subject to the restriction) provided for by section 18 above quoted. She could not; alienate it during her subsequent marriage; and, having died! during that marriage, the property went, by virtue of the statutory canon of descent, to the plaintiff, Mary E., the child of the marriage in virtue of which her mother received and held it.
But it is urged by counsel for the appellant, that, after the partition, Julia A. Lindsay held the property in virtue of the judgment of partition, and not in virtue of her marriage with Milton Eoudray, and, therefore, that she held it free from the restriction of section 18, and could alienate it during her subsequent marriage. This argument, urged with much ingenuity and plausibility, seems to us to be-destitute of foundation. If the argument is well founded,, a widow entitled, as is usually the case, to one-third of her husband’s land, upon his decease, after getting her share set off to her by partition, holds it free from the restriction of section 18, and may alienate it during any subsequent, marriage. After the partition Mrs. Lindsay held the portion set apart to her by the same title by which she held the undivided share before partition. She held it by descent from her former husband, and not by purchase. The effect of the partition was to sever the respective shares, and not to change the source of title. This point was considered in the case of Doe v. Dixon, 5 A. & E. 834, in which Lord Denman, C. J., said: “In this case one of twopai’ceners alienated his moiety in fee, whereby the alienee, and the remaining parcener became tenants in commoxx. Afterwards, by deed of partition betweexx the alienee and. the remaining parcener, the land was divided by metes and' bounds, and each of the.m took a moiety in severalty. The question is whether by that deed the parcener took axxy thing as purchaser, so as to break the descent ex parte ma *290 terna, and to let in the heir ex parte paterna on the death of the parcener. It is admitted that, if the deed of partition had been between the parceners themselves, the descent would not be broken; Com. Dig. Parceners, (C. 15). But it is said that, inasmuch as one of the parties to the deed was a stranger in blood, whatever was taken from him by the parcener must be taken by purchase. And doubtless this would be so if any thing was taken from him : but we are of opinion that nothing was taken by the parcener from the alienee under the deed. The effect of it was only that the parcener had by it a divided moiety in severalty discharged from any right in the alienee, instead of an undivided moiety in common; but he had the same estate in the land as before.”
In Wade v. Deray, 50 Cal. 376, it was held to be “well settled that a decree or judgment in partition has no other effect than to sever the unity of possession, and does not vest in either of the co-tenants any new or additional title. After the partition, each had precisely the same title which he had before; but that which before was a joint possession was converted into a several one.” See also Knight v. McDonald, 37 Ind. 463, and Teter v. Clayton, 71 Ind. 237.
But appellant insists that the particular» judgment in the partition suit cuts off the right of the plaintiff to the property ; but this position is as untenable as the other.
The judgment, doubtless, cut off any right or supposed right which the plaintiff then had in the share set off to Mrs. Lindsay; but it did not in any manner affect any right that she might afterwards acquire to that share. The judgment •dealt with then existing rights, and none other. The right which the plaintiff now sets up to that share did not exist at the time of the partition, but has accrued since.
By the descent and the partition, Mrs. Lindsay became vested with the fee simple to the share set off to her, discharged of any then existing claim of the plaintiff to it, but *291 "the partition- could not enable her to alienate it during her -marriage, nor could it control the law of descent and determine who should inherit the property in case she should die •during that marriage. Mrs. Lindsay took the fee with the .right of alienation at any time that' she might be free from coverture. Had she survived Mr. Lindsay, she could have conveyed the fee. See Small v. Roberts, 51 Ind. 281; Piper v. May, 51 Ind. 283; Nesbitt v. Trindle, 64 Ind. 183; Sebrell v. Hughes, 72 Ind. 186.
The deed executed by Mr. and Mrs. Lindsay to Cully was rendered absolutely void by the 18th section of the statute. Newby v. Hinshaw, 22 Ind. 334; Vinnedge v. Shaffer, 35 Ind. 341; Mattox v. Hightshue, 39 Ind. 95; Bowers v. Van Winkle, 41 Ind. 432; Edmondson v. Corn, 62 Ind. 17.
The result is that the title remained in Mrs. Lindsay until .her death, when the property descended to the plaintiff as the child of the marriage in virtue of which her mother held it.
We come to the supposed estoppel. The deed executed .by the plaintiff Mary E. was but a quitclaim deed. The words therein, “to said David Y. Cully, his heirs and assigns forever,” do not make it anything more than a quitclaim -deed. If she had had the fee to convey, then these words would have operated to convey that quantity of estate. But . she then had no estate in the premises whatever, nor did her deed affirm, directly or by any necessary implication, that she had. It is well settled that such a deed will not estop her to set up her title afterward acquired. Van Rensselaer v. Kearney, 11 How. 297; Shumaker v. Johnson, 35 Ind 33; Nicholson v. Caress, 45 Ind. 479; Graham v. Graham, 55 Ind. 23.
But it is alleged that the plaintiff consented to the conveyance of the property to Cully by her mother and her mother’s husband, and to the receipt by her mother of the purchase-money; and that she, after her mother’s death, received from Mr. Lindsay f 1,300 of the purchase-money, knowing the source from which it came.
*292 It is alleged iij the counter-claim filed by the defendant,, that Cully, the plaintiffs guardian, requested the plaintiff to consent to the conveyance to him of the property by Lindsay and wife.
This attempted conveyance was made for $4,000. Within less than two years from that time, Cully sold it to the defendant in this action for $8,000. The property may, however, have rapidly risen in value in the meantime.
We do not think the receipt by the plaintiff Mary E., of the $1,300, estops her to set up her title derived by descent from her mother. She steps into the shoes of her mother-in respect to the title; that is, she takes whatever title her mother had. Her mother could not have been estopped by the receipt of the purchase-money to set up the invalidity of her deed to Cully; for, if she could, it would work a. substantial abrogation of the interdict upon alienation during a second or subsequent marriage, contained in the 18th section. If her mother could not have been estopped by the receipt of the purchase-money, it would seem to follow that the mere transmission of the money from the mother-to the plaintiff could not work the estoppel.
Beyond what has been noticed, there is nothing in the* case that has any of the elements of an estoppel.
The plaintiff consented to the conveyance by Lindsay and wife to Cully; but she practiced no fraud, deception or concealment upon any one.
As was said by the Supreme Court of Wisconsin in the case of Edwards v. Evans, 16 Wis. 193, “It would be most unreasonable to exclude a party from showing his title because of his participation, without fraud or deception, in a transaction notoriously void, from which it was well known no legal or equitable right could arise. The case seems entirely destitute of the essential elements of an estoppel.”
The judgment below at general term is affirmed, with costs-
Petition for a rehearing overruled.