No. 9868.

BUMGARDNER v. EDWARDS, TRUSTEE, ET AL.

85  117
146  84

85  117
149  422

PARTITION.—Descents.— Widow.—Conveyance.— Statute Construed.— Husband˙ and Wife.—A woman, married a second time, holding by descent an un-- divided third of the lands of a former husband, may, without suit, make- fair partition with the children of her former husband, and deeds exe- cuted by her and her second husband, to carry out such partition, are not. an alienation prohibited by section 2484, R. S. 1881, as it stood prior to- its amendment in 1879; and after such partition, and possession taken by the parties, she ceased to own any interest in the lands allotted to the: children of the former husband.

From the Benton Circuit Court.

S. P. Thompson and D. Smith, for appellant.

H. W. Chase, F. S. Chase, F. W. Chase and M. H. Walker,. for appellees.

BLACK, C.—The appellant, Celinda Bumgardner, wife of David Bumgardner, brought suit in December, 1879, for the· partition of a tract of land, being one hundred and twenty- six acres, in Benton county, in this State, claiming to be the· owner in fee simple of the undivided one-third thereof, her· title to which she sought to have quieted, alleging that while holding said interest in said real estate in virtue of her mar- riage with John J. French, deceased, she had united with her second husband, said David Bumgardner, in a deed purport- ing to convey it to William W. Parker and Nancy I. Parker, his wife. Said Parkers were made defendants. Jonathan Ed- wards, The Equitable Trust Company, of· Hartford, Connec- ticut, and Jonathan Edwards, as trustee of said Equitable· Trust Company, were also made defendants, it being alleged that they claimed some interest adverse to the plaintiff, by reason of certain mortgages made by said Parkers, and the· foreclosure thereof.

There were other defendants, as to whom no action was· taken, and they are not parties to this appeal. They need not be further mentioned.

The defendant Jonathan Edwards filed an answer, which is not in the transcript.

Jonathan Edwards, as trustee for said Equitable Trust Company, and said company, filed an answer of general denial, and a cross complaint against the plaintiff and the defendants Parker and wife, and also making defendants to the cross complaint Elizabeth Totheroh and Daniel Totheroh, her husband. Interrogatories were filed with the cross complaint, and the appellant answered them under oath. Appellant demurred to the cross complaint, for want of sufficient facts. The demurrer was overruled. Appellant then filed her answer to the cross complaint. The plaintiffs in the cross complaint demurred to the answer thereto. The demurrer was sustained; and appellants, for a second paragraph of answer to the cross complaint, filed a general denial. The defendants Elizabeth Totheroh and Daniel Totheroh answered the cross complaint, disclaiming all interest in the lands mentioned therein. The Parkers were defaulted.

The cause was tried by the court, an agreed statement of facts, made part of the record by order of the court, being submitted to the court as the evidence.

The court found for the appellee Jonathan Edwards, trustee, on the appellant's complaint and on the cross complaint. The appellant moved for a new trial, the only question presented by the motion being, whether the finding was sustained by sufficient legal evidence. The motion was overruled, and the court rendered judgment that the appellant take nothing by her complaint; that the appellant and the appellees Parker and Parker, and Totheroh and Totheroh, had no interest in the real estate mentioned in the cross complaint, describing it, being said one hundred and twenty-six acres, as against the mortgage executed by the Parkers to said trustee, subject to the right, if any, of the Parkers to redeem under the redemption laws of 1861 and 1879, and that said trustee recover of the appellant his costs, except those incidental to making the Parkers and the Totherohs parties to the cross complaint.

The appellant's assignment of errors questions the correctness of the action of the court in overruling her demurrer to the cross complaint, in sustaining the demurrer to her answer to the cross complaint, and in overruling her motion for a new trial.

The cross complaint and the answer thereto are very long. The allegations of the cross complaint were sustained by the statement of facts submitted as evidence, and all the questions arising upon the pleadings are involved in the question of the sufficiency of the evidence. If the facts agreed to sustain the finding, there was no error in the rulings upon the demurrers. We will, therefore, not set out the cross complaint or the answer thereto, but will endeavor to abstract the substantial facts agreed upon, the statement in the record being long and complicated.

Said John J. French died intestate, in said county of Benton, in 1863, leaving surviving as his only heirs said Elizabeth Totheroh and Nancy I. Parker, his only children, and appellant, his widow; Elizabeth was then married, said Daniel Totheroh being her husband, and, in 1873, said Nancy was married to said William W. Parker. Said French at his death was seized in fee of fifty-three acres of land in Illinois, and two hundred and ninety acres in said Benton county, Indiana. Appellant was married to said David Bumgardner in 1872. In 1874, said William W. Parker sought to obtain from appellant and her husband a conveyance of the land in controversy, which was one of the tracts of which said French was seized at his death. Appellant at first objected, but on the 26th of February, 1875, she yielded to the solicitation of said Nancy, and appellant and her said husband then executed a quitclaim deed, which is set out in the evidence, for the tract of one hundred and twenty-six acres in controversy, to said Nancy I. Parker and her said husband.

On the 16th of August, 1875, said Elizabeth and Nancy, and their said husbands, executed to appellant their deed of quitclaim, which is set out, for all their right, title and interest

in and to two other parcels of land in said county, together comprising ninety-seven acres, and being portions of the lands owned by said French as aforesaid.

On the 22d of March, 1878, appellant and her said husband, David Bumgardner, and said Nancy and her said husband, conveyed and warranted to said Elizabeth and her said husband, by a deed which is set out, twenty-eight acres, being a part of said tract of one hundred and twenty-six acres. This deed purported to be made to correct an error in the description of the land in a deed executed to the same grantees dated May 3d, 1875.

The consideration expressed in each of these three deeds was one dollar. In each the appellant was described as the widow of John J. French, and said Nancy and Elizabeth were described as his daughters.

It did not appear whether or not any deed of conveyance of the land in Illinois had been made. Elizabeth had occupied it since the death of her father.

The interrogatories filed with the cross complaint and appellant's sworn answers thereto were made parts of the agreed statement of facts. In one of her answers, in response to a question as to what agreement for partition of the lands was made, she said : " We never made any satisfactory agreement, but did make quitclaim deeds in 1875, and one warranty deed in 1878," being the deeds before mentioned. In answer to another question she said: " We never made any writings but the quitclaim deeds, and made no agreement whatever, except that by over-persuasion, I and my husband signed the deeds." She also said that she did not know of any other deeds than those mentioned.

Nancy and her said husband went into possession of said one hundred and twenty-six acres in 1874. Appellant said : " The reason why they went into possession was that they had no other place, and Wallace Parker " (said Nancy's husband) " insisted and requested me to let him take possession, and I consented."

She said that Nancy and her husband had ever since been in exclusive possession of said 126 acres, except that portion so conveyed to said Totherohs, of which said Daniel Totheroh had been in possession for the last two years preceding the time of her answering the interrogatories, which was on the 28th of April, 1880.

Appellant and her husband had been in possession of said ninety-seven acres for five years preceding said last mentioned date. She said that she had not had possession during that period of the land in controversy, because she consented for her daughter Nancy and her husband to occupy it.

It was agreed that no effort was made, and no acts were performed, and no contracts were entered into, with reference to changing the title or possession of any real estate of said decedent, prior to February 26th, 1875, when the deed to the Parkers was executed without any consideration paid to appellant, but merely for friendship, and because the appellant supposed said Nancy would, at appellant's death, be entitled to that amount of land, as heir of said French and child of appellant; that said Totherohs, said Parkers and the appellant had, by mutual consent, remained in possession of the several tracts of land described in said deeds, since February 26th, 1875, without objection on the part of appellant; that the heirs made a friendly arrangement, after appellant's said second marriage, as to what portion of the decedent's real estate each should occupy, and the deeds indicated the lands each should occupy; that no proceedings in court were ever instituted to partition the real estate of the decedent, and there was no agreement to divide the same prior to the winter of 1874 and 1875, when it was agreed to sign and deliver the deeds, and they were afterward signed and delivered; that said French had no other lands than those mentioned; that when this suit was commenced said Elizabeth and her husband had no legal title to any part of the land described in the complaint, and said Nancy and her husband had no legal title to any other real estate owned by said French at the time of his

death; and that all said deeds were on record before November, 1876.    It was further agreed that on November 1st, 1876, said William W. Parker borrowed of said Equitable Trust Company $1,500, and he and his wife, said Nancy, made a mortgage to said Jonathan Edwards, as trustee, upon the land in controversy, to secure said loan, which mortgage was duly recorded in the records of said county, January 8th, 1877; that on the 5th of December, 1878, a suit in foreclosure was commenced in the United States Circuit Court, and a valid decree of foreclosure was entered in said court on the 6th of August, 1879, in favor of said mortgagee and against the defendants, said Parkers and others, but the appellant was not a party to that suit; that a copy of said decree was lawfully issued, and, on the 27th of October, 1879, said real estate was duly and legally sold at a master's sale, and said Jonathan Edwards purchased the same, for the price of $2,058.49, the amount of the decree and costs; that said land had not been redeemed from said sale; and that in this action the real party in interest as cross plaintiff was Jonathan Edwards, trustee for the Equitable Trust Company, and that if the petition of the plaintiff should not be granted by the court, and the cross petition should be granted, the decree of the court should be in favor of said Edwards as such trustee.

The appellant bases her claim upon section 18 of the statute of descents, as that section stood before its amendment in 1879.    It provided: "If a widow shall marry a second or any subsequent time holding real estate in virtue of any previous marriage, such widow may not, during such marriage, with or without the assent of her husband, alienate such real estate, and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be."    1 R. S. 1876, p. 411.

A married woman can not divest herself of legal title to real estate by estoppel *in pais,* or by any method except by deed in which her husband shall join.    *Behler* v. *Weyburn,*

59 Ind. 143. Much more, if possible, is it true that she can not divest herself by estoppel *in pais* where she can not divest herself by deed in which her husband joins. *Unfried* v. *Heberer*, 63 Ind. 67.

If the real estate mentioned in the complaint, or any portion thereof, could be said to ·be real estate held by her in virtue of her previous marriage, within the meaning of said statute, the deed of herself and her husband and her conduct would be wholly ineffectual to deprive her of title or right of possession, and her claim set up in the complaint would be well founded.

In *Moore* v. *Kerr*, 46 Ind. 468, this court, upon deliberation, expressly adopted the doctrine that a parol partition made by tenants in common, where possession is taken and held in pursuance of such ·partition, is valid; and it was said: " The distinction between the partition of lands among the owners thereof and a sale of lands is pretty clear. The statute of frauds relates to 'contracts for the sale of lands.' After partition of land has been made among tenants in common, each owns in severalty an interest equal to that which ·before he held in common. The partition does not transfer the title of the parties so much as it assigns or apportions to each his share in severalty in the land."

In 1 Washburn on Real Property, star p. 430, par. 13, it is said that although parol partition between tenants in common may not affect the legal title of the several owners, yet where it is followed by a possession in conformity with such partition, it will so far bind the possession as to give to each co-tenant the rights and incidents of an exclusive possession of his property.

In *Avery* v. *Akins*, 74 Ind. 283, the share of a married woman in real estate, held by her in virtue of a previous marriage, having been allotted to her in severalty by judgment of partition, it was held, that after the partition she held the portion set apart to her by the same title by which she held the undivided share before partition; that she held it by de-

scent from her former husband, and not by purchase, and *Doe* v. *Dixon*, 5 A. & E. 834, was cited as authority. In *Doe* v. *Dixon*, one of two parceners had alienated in fee, whereby the alienee and the other parcener became tenants in common. The tenants in common made partition by deed, and it was held that by the deed of partition the parcener, as would have been the case if it had been between the parceners themselves, took nothing by purchase, but had the same estate in the land as before. See, also, *Utterback* v. *Terhune*, 75 Ind. 363; Freeman Cotenancy & Partition, section 396.

The question of title does not necessarily arise in an action for partition. *Harness* v. *Harness*, 49 Ind. 384; *McFerran* v. *McFerran*, 69 Ind. 29; *Earle* v. *Peterson*, 67 Ind. 503; R. S. 1881, section 1071.

Allnatt on Partition, 21 (5 Law Library), quoted in Freeman on Cotenancy & Partition, section 412, speaking of parol partition between parceners, says: " If parceners, seized in fee simple, marry, and they and their husbands make an equal and fair partition in value, it will be binding on the wives and their heirs; and the reason of this is, because the husbands and wives are compellable at common law to make partition; and that which they are compellable to do in this case by law, they may do by agreements without process of law."

In *Potter* v. *Wheeler*, 13 Mass. 504, the court said, that it is always in the power of one tenant in common to enforce partition, and that there seems to be no good reason why a voluntary performance of an act, to which the party is compellable by law, should not have the same effect as if produced by compulsion.

Lord Coke says (Co. Lit. 171 *a*): "As before, in the case of the fem covert, so it is in the case of the enfant; for if the partition be equall at the time of the allotment, it shall binde him forever, because he is compellable by law to make partition, and he shall not have his age in a *partitione facienda;* and though the partition be unequal, and the enfant hath the

lesser part, yet is not the partition void but voidable by his entry; for if he take the whole profits of the unequall part, after his full age, the partition is made good forever."

In *Bavington* v. *Clarke*, 2 Penrose & W. 115, 124, it is said: "And so it is if partition is made without suit, provided it is fair. Where any person, even an infant, does that which by law he is compelled to do, that is, makes *equal partition*, he is bound."

In Freeman Cotenancy & Partition, section 415, the author says: "We have seen that voluntary partitions made by or on behalf of infants, and *femes covert*, will be treated as binding and valid where they were equal at the time they were made, and were, in their inception and consummation, free from all taint of fraud. The theory upon which such partitions are enforced is that the interests of the co-tenants are always best promoted by an occupation in severalty; and therefore that all honest and fair agreements, having a direct tendency to authorize such occupation, ought to be sustained. These parties, though under disabilities, may be compelled to make partition; and whatever the law will compel them to do, it ought to allow to be done without compulsion."

In *Newby* v. *Hinshaw*, 22 Ind. 334, a widow, holding land in virtue of her marriage, contracted for the sale thereof, and afterward she again married, and it was held that she might, during such subsequent marriage, be compelled to specifically perform the contract so made while she was sole, by conveying the legal title to the purchaser; and in *Deweese* v. *Reagan*, 40 Ind. 513, it was held, that what she could thus be compelled to do she might voluntarily do. The court said: "It is a general rule of the law, that parties may voluntarily do without suit that which a court would require them to do by a suit. * * The sale of the land is the substantial thing, and this can not be effected during such second or subsequent coverture."

A married woman holding real estate in virtue of a previous marriage, as did the appellant, might not, under said stat-

ute voluntarily alienate such real estate, directly or indirectly, nor could she be compelled to alienate it. But she might be compelled, as a tenant in common, to make partition between herself and her co-tenants. *Finch* v. *Jackson*, 30 Ind. 387.

Partition between her and her co-tenants, whether made by judgment, by deed or by parol, not being a transfer of property by purchase, but being an allotment to each co-tenant of her share in severalty to be held by the same title as that by which before the partition she held her undivided share, and being something to make which such married woman, as well as her co-tenants, could be compelled, it can not, we think, be properly called an alienation within the meaning of the statute, whether accomplished by judgment, by deed or by parol.

We think it was not intended by the Legislature, that a woman, under such circumstances, should not be able to obtain the sole occupation and use of her share of land so held as tenant in common by any of the methods by which tenants in common generally may make severance of their shares. The purpose of the statute is not thereby thwarted.

If partition was agreed upon by appellant and her co-tenants, and what was done by them was done in performance of such agreement, the partition could not be vitiated by the fact that deeds of conveyance for the several shares were exchanged, or by the fact that each of the daughters, instead of taking the deed for her share to herself alone, took it to herself and her husband.

In *Sharpe* v. *Davis*, 76 Ind. 17, there was an instance of a partition of lands in which the share of one co-tenant was conveyed to his wife and daughter.

If the appellant has her full share of her first husband's lands, she is not legally concerned as to what her former co-tenants do with their several shares, whether they hold them in severalty or with their husbands as tenants by entireties, or sell them or give them away.

We can not say that the evidence was insufficient for the

trial court to find that the co-tenants made partition, and that appellant's deed was executed to carry it out.

This was not a suit to obtain a new partition and a readjustment of the shares because of inequality in value of the shares given and taken under the partition made by the cotenants, or for any other reason.

A judgment in partition can not be reversed in part. A reversal as to one party, it is said, would unsettle the whole partition, and require a new one. *Kyle* v. *Kyle*, 55 Ind. 387.

" It is not competent for a tenant in common to enforce partition as to a part of the common estate. He must go for a partition of the entire estate if he would divide any part." 1 Washb. Real Prop. 428.

If appellant has received in severalty her full one-third of the decedent's lands, she is not entitled to more. If she holds in severalty a portion of the lands, taken as her entire share, she should not come into court demanding more, without showing that she has not received her full share. If she can do so as to the portion conveyed to Nancy and her husband, why may she not also as to the portion conveyed to Elizabeth and her husband?

Retaining her own share, and claiming exclusive ownership of it in severalty, and making no offer to relinquish it or any portion of it, and not claiming that it was unequal in value to the other shares, the appellant sought partition of lands allotted by her in severalty to her late co-tenants, as if the lands of which she so sought partition were the only lands of the first husband.

It did not devolve upon the appellees to show that the share taken by her was unequal in value to the other shares. If such a reason for a new partition existed, it would be for her, in seeking a new partition, to show the inequality.

By asking partition, she claims a co-tenancy. If the deeds were exchanged for the purpose of making partition, she could not enforce partition of this portion of the lands owned by

her first husband, while denying that the children of her first husband were her co-tenants of the lands which had been set off to her, and which she was occupying; and the appellee Edwards, trustee, claiming under appellant's co-tenants, could not be affected by their indifference in this action as to whether the appellant, retaining her own share, should recover a portion of their shares from said trustee.

The land which she is unable to alienate during her subsequent marriage is that which she holds in severalty as her share of all her former husband's lands, and her deed made in effecting the partition could not be regarded as an attempted alienation forbidden by the statute.

We think the judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be and it is hereby affirmed, at appellant's costs.