Haskett *et al. v.* Maxey *et al.*

No. 14,641.

## HASKETT ET AL. *v.* MAXEY ET AL.

DESCENT.—*Second Wife without Children.—Children by First Wife.—Life Estate.—Fee Simple.—Statute Differently Construed.*—A. died intestate, in 1855, leaving as his widow a second wife, by whom he had no children, and heirs by the first wife. Partition proceedings were had, which resulted in a judgment for partition, declaring the widow entitled to a third of the land, which was set off to her, and the remainder was partitioned among the children by the former wife. The widow, in 1865, sold and conveyed, by quitclaim deed, the land so set off to her to one B., and, about the same time, certain of the children by the former wife conveyed their interest in said land to B. by quitclaim deeds. In December, 1885, the grantees of B. commenced suit to quiet their title to said land, making defendants thereto the children of A. by his first wife. Did A.'s widow, upon his death, acquire a life estate or fee simple interest in the lands of A.?

*Held,* that A.'s widow took a fee simple interest in the lands of her husband, but, as the statute (sections 2483 and 2487, R. S. 1881) was construed to mean, at the time the land was sold and conveyed, that the widow should be entitled to a life interest in the lands, the statute, as then construed, must determine the rights of the parties, and a subsequent change in its construction could not operate retroactively so as to impair the obligation of contracts.

*Held,* also, that the children by the first wife, at the time they executed their quitclaim deeds, had no interest in the land, and that such deeds do not estop them from asserting an after-acquired right to such land.

TITLE.—*When not Affected by Partition Proceedings.*—In an action for the partition of land, where no other question is adjudicated, the judgment does not vest a new title, but the parties hold by the same title as existed before judgment.

STATUTE OF LIMITATIONS.—*When Begins to Run Against Heirs.*—Where land descends to a second wife without children, the statute of limitations does not begin to run against the children of the first wife by the same husband until the death of the step-mother.

*Bryan* v. *Uland,* 101 Ind. 477, modified.

From the Howard Circuit Court.

*J. C. Blacklidge, W. E. Blacklidge* and *B. C. Moon,* for appellants.

*J. W. Cooper* and *B. F. Harness,* for appellees.

COFFEY, C. J.—This was an action brought by the appellants, Robert E. Haskett, Isaac R. Haskett, and Byron Haskett, against the appellees, Susanah Maxey, Joseph T. Brookbank, Mary E. Lee, Amos E. Brookbank, Reuben G. Brookbank, William T. Wiley, Hester A. Mitchell, Mary E. Jarrett, Susan S. Stillwell, Elizabeth Pearce, Franklin Worthington, and others, to quiet title to the land described in the complaint.

The appellees above named filed a cross-complaint against the appellants and others, in which they alleged that they were the owners in fee of the land in controversy, and prayed that their title might be quieted.

A large number of other pleadings were filed in the cause, upon which issues were formed, and upon which the cause was submitted to the court for trial without the intervention of a jury.

The court, on proper request, entered a special finding of the facts proved, and stated its conclusions of law thereon. To the conclusions of law stated by the court each of the parties excepted.

It is probable that all the evidence in the cause, relating to the title to the land in controversy, would have been admissible under a general denial to the complaint, and under a similar pleading addressed to the cross-complaint. However this may be, it is plain, we think, that all the questions necessary to a determination of the cause upon its merits arise upon the facts specially found by the court. For this reason, we deem it unnecessary to give the pleadings in the cause any further notice.

The facts in the cause, so far as they are necessary to an understanding of the legal questions involved, as they appear by the findings, are, that Thomas Brookbank died intestate in Howard county, on the 25th day of September, 1855, leaving as his only heirs at law a widow, Mary Brookbank, and the following named children and grand-

children, namely: Harrison Brookbank, Susanah Maxey, William Brookbank, Martha Worthington, Mary Bennett, and Reuben G. Brookbank, sons and daughters, and William T. Wiley, Elizabeth Pearce, Susan Stillwell, and Thomas Wiley, grandchildren. His widow was a second wife, by whom he had no children, the children above named being children by a former wife. At the time of his death, Thomas Brookbank was the owner in fee of the land involved in this suit, together with other lands in Howard county, Indiana. On the 5th day of February, 1856, William Brookbank commenced an action in the Howard Common Pleas Court, for the partition of the lands of which his father died seized, making parties thereto the widow and the heirs above named. He alleged in his complaint that he and the defendants to the action, other than the widow, were tenants in common of all the lands of which his father died seized, describing them, setting forth their respective interests. It was further alleged that the widow, Mary Brookbank, was the second wife of Thomas Brookbank, deceased, and had by him no children, and that the other parties to the suit were children by a former wife, and that he owned all of said land at the time of his second marriage.

From these facts it was alleged that the widow was entitled to a dowery or life estate only in the lands of which her husband died seized.

All the adult defendants to this action suffered a default, and thereupon the cause was submitted to the court, who found the several interests of the parties, among which was a finding that Mary Brookbank, the widow, was entitled to one-third of the land described in the complaint in that cause for life, and that said William Brookbank was entitled to one-seventh of the land subject to such life estate. Under this finding and an interlocutory decree, according to its terms, one-third of the

land described in that complaint was set off to Mary Brookbank, the widow, for life, and the remainder was partitioned among the heirs by the former wife.

The widow at once took possession of the land so set off to her, and on the 13th day of February, 1865, sold the same to Henry Williams for the consideration of five hundred dollars, and conveyed the same to him by quit-claim deed. On the 7th day of July, 1865, Reuben G. Brookbank sold his interest in this land to the said Williams for the sum of one hundred and fifty dollars, and conveyed it by quitclaim deed. On the 18th day of September, 1865, William T. Wiley sold his interest in the land to Williams for the sum of seventy dollars, and conveyed by quitclaim deed. On the 31st day of January, 1865, William Brookbank and James Bennett sold their interest in the land to Williams for the consideration of three hundred dollars, and conveyed to him by quitclaim deed. On the 27th day of January, 1865, Harrison Brookbank and Susanah Maxey conveyed their interest in this land to Williams by quitclaim deed, but upon what consideration it does not appear. In the year 1866, the guardian of Franklin Worthington and Susan Wiley, who were then minors, by order of the proper probate court, sold and conveyed their interest in this land to Williams for the consideration of four hundred and forty-one dollars.

The land set off to Mary Brookbank is the land involved in this suit, and each of the appellants claims under Henry Williams, who had no other title than that above set forth.

Williams took possession of the land immediately upon the execution of the deed to him by the widow, and he and his grantees have ever since been in the exclusive possession of the land, claiming title thereto. This suit was commenced on the 5th day of December, 1885.

It is contended by the appellants:

*First.* That upon the death of Thomas Brookbank, the fee to the land in controversy vested in his children by the previous marriage, and that his widow, Mary Brookbank, took a life estate only in such land.

*Second.* That by the partition proceedings set out in the special finding of facts, entered by the court, the children of Thomas Brookbank are estopped from asserting that Mary Brookbank, his widow, took any greater interest in his lands than a life-estate.

*Third.* That the appellees, plaintiffs in the cross-complaint filed by them, are barred by the statute of limitations from asserting any interest in the land in controversy.

*Fourth.* That a rule which would permit the appellees to recover the land in controversy, under the facts above stated, would violate section 10, article 1, of the Constitution of the United States, inasmuch as it would impair the obligation of contracts.

On the other hand, it is contended by the appellees that, upon the death of Thomas Brookbank, his widow, Mary Brookbank, took a fee in the land in controversy, and that their quitclaim deeds to Williams does not estop them from asserting an after-acquired interest in the land.

*Second.* That the partition proceedings set out in the special finding, did nothing more than part the lands therein involved, and that the title was in no way affected thereby.

*Third.* That the statute of limitations did not begin to run until the children of Thomas Brookbank had a right of entry, and, therefore, their rights in the land in dispute are not barred.

*Fourth.* That the rights of the parties in the lands involved in this suit, are to be determined by the law as it

is now declared, and not by the law as it was declared at the time it is claimed Williams acquired it.

Under the provisions of sections 2483 and 2487, R. S. 1881, it was held, in the case of *Martindale* v. *Martindale*, 10 Ind. 566, that a second or subsequent wife, having no children by her husband, took a life estate only in his lands where he left, upon his death, children alive by a former wife. The decision was rendered at the May term of this court in the year 1858. There is an unbroken line of decisions, rendered by this court, extending from that date to the May term, 1881, placing the same construction upon this statute, as will be seen from an examination of the following cases, namely: *Ogle* v. *Stoops*, 11 Ind. 380; *Rockhill* v. *Nelson*, 24 Ind. 422; *Louden, Admr.,* v. *James*, 31 Ind. 69; *Longlois* v. *Longlois*, 48 Ind. 60; *Long* v. *Miller*, 48 Ind. 145; *Russell* v. *Russell*, 48 Ind. 456; *Hendrix, Exec.,* v. *McBeth*, 61 Ind. 473; *Swain* v. *Hardin*, 64 Ind. 85; *Hendrix* v. *Sampson*, 70 Ind. 350; *Chisham* v. *Way*, 73 Ind. 362.

But at the May term, 1881, the case of *Utterback* v. *Terhune*, 75 Ind. 363, was decided, in which it was held that the second or subsequent wife, having no children by her husband, took a fee in his land, where he died leaving children alive by a previous wife, and that upon her death the children by the former wife became her forced heirs. This is now settled as the correct construction of this statute. *Caywood* v. *Medsker*, 84 Ind. 520; *Hendrix* v. *McBeth*, 87 Ind. 287; *McClamrock* v. *Ferguson*, 88 Ind. 208; *Flenner* v. *Benson*, 89 Ind. 108; *Flenner* v. *Travellers Ins. Co.*, 89 Ind. 164; *Bryan* v. *Uland*, 101 Ind. 477; *Thorp* v. *Hanes*, 107 Ind. 324; *Erwin* v. *Garner*, 108 Ind. 488; *Gwaltney* v. *Gwaltney*, 119 Ind. 144.

The construction now placed upon this statute should be deemed correct, but as to the wisdom of overruling a

line of decisions which had been steadily adhered to for the period of twenty-three years, we have nothing to say, further than to remark that stability in the decisions of a court of last resort is greatly to be desired. To over-rule precedents, which have become recognized rules of property, and the basis of contract relations, unsettles titles, disturbs business transactions, and introduces an element of uncertainty into the administration of justice from which the public suffer great inconvenience. As was said in the case of *Rockhill* v. *Nelson, supra,* "There are some questions of law, the final settlement of which is vastly more important than how they are settled."

We fully endorse the language of the world's greatest commentator, when he says: "It is an established rule to abide by former precedents, where the same points come again in litigation: as well to keep the scales of jus-tice even and steady, and not liable to waver with every new judge's opinion; as also because the law in that case being solemnly declared and determined, what be-fore was uncertain, and perhaps indifferent, is now be-come a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from according to his private sentiments: he being sworn to determine, not according to his own private judgment, but according to the known laws and customs of the land; not delegated to pronounce a new law, but to maintain and expound the old one." 1 Black. Com., p. 69.

In this case, we are asked by the appellants to overrule a line of decisions of many years' standing, for the pur-pose of returning to a line of decisions which has long since been abandoned. We are thus asked to create a new confusion in order to avoid an old one. This we can not do. It is our duty to adhere to the construction of this statute which it has steadily received for the last eleven years, and in doing so we are constrained to hold that

upon the death of Thomas Brookbank his widow, Mary Brookbank, took a fee-simple interest in one-third of the land of which he died seized. It follows from this holding that his children, at the time they executed quitclaim deeds to Williams, had no interest in the land in controversy to convey to him.

The general rule is that a quitclaim deed does not estop the person executing it from asserting an after-acquired interest in the land therein described. This general rule has its exceptions, but the case before us does not fall within such exceptions. *Avery* v. *Akins*, 74 Ind. 283; *Van Rensselaer* v. *Kearney*, 11 How. 297; *Shumaker* v. *Johnson*, 35 Ind. 33; *Graham* v. *Graham*, 55 Ind. 23; *Bryan* v. *Uland, supra.*

A judgment in partition does not, ordinarily, vest in the co-tenants a new title, but each has the title he held before such judgment. It is true that the pleadings in a partition suit may be so framed as to raise and settle, in that kind of action, questions of title, but where nothing more than partition is sought, no question of title is settled. It has been held by this court that a complaint of the character of the one set out in the special finding in this case, does not tender a question of title. *Bryan* v. *Uland, supra; Habig* v. *Dodge,* 127 Ind. 31.

As a general rule, the statute of limitations does not begin to run until there is a right of action.

The children of Thomas Brookbank had no right to the possession of the land in controversy, nor did they have any interest in it until the death of Mary Brookbank, their step-mother, and for this reason the statute of limitations did not begin to run as to them while she lived. *Wright* v. *Tichenor,* 104 Ind. 185; *Butterfield* v. *Beall,* 3 Ind. 203; *Nicholson* v. *Caress,* 59 Ind. 39; *Mettler*

v. *Miller*, 22 N. E. Rep. 529; *Kirk* v. *Smith*, 9 Wheat. 241, 3 Wash. Real Prop. (4th ed.), 147.

As we have said, it was held by this court for a period of twenty-three years that the interest taken by the widow, under the facts existing in this case, was a life estate only, and that the fee in the land was in the children by the former marriage. In the case of *Swain* v. *Hardin*, 64 Ind. 85, which involved a distribution of the proceeds of the sale of land in a partition proceeding, the widow being a second wife without children, this court said: "The plaintiff and defendants were tenants in common of the land, the plaintiff having an estate for life in one-third thereof, and the defendants having the fee, subject to the plaintiff's life-estate in the third."

Acting upon the assumption that this court had placed the true construction upon the statute of descents, and that Mary Brookbank was the owner of a life estate only in the land in controversy, and that the children of Thomas Brookbank was the owner in fee, they sold and conveyed it to Williams, through whom the appellants claim their title. Since the decisions upon which they relied, and upon the faith of which the contract and purchase were made, have been overruled, the appellees claim that, inasmuch as they conveyed by quitclaim deeds only, they are entitled to both the purchase price paid and the land. If the rights of the parties are to be determined by the construction of the statute now placed upon it, this claim must prevail, but if they are to be determined by the construction of the statute placed upon it at the time the land was purchased and conveyed, the claim of the appellees must fail.

Courts of last resort are often constrained to change their rulings on questions of the highest importance. When this is done, the general rule is that the law is not changed, but that the court was mistaken in its former

decision, and that the law is, and always has been, as expounded in the last decision. But to this general rule there is a well established and well understood exception. This exception is that, "After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment." *Douglass* v. *County of Pike*, 101 U. S. 677; *Anderson* v. *Santa Anna*, 116 U. S. 361; *Insurance Co.* v. *Debolt*, 16 How. 415; *Gelpecke* v. *Dubuque*, 1 Wall. 175; *Havemeyer* v. *Iowa Company*, 3 Wall. 294; *Olcott* v. *Supervisor*, 16 Wall. 578; *Taylor* v. *Ypsilanti*, 105 U. S. 72.

In *Insurance Co.* v. *Debolt, supra,* it was said: "The sound and true rule is, that if the contract when made was valid by the laws of the State, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation can not be impaired by any subsequent act of the Legislature of the State, or decision of its courts, altering the construction of the law."

So, in *Douglass* v. *County of Pike, supra,* it was said: "The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive."

Sutherland on Statutory Construction, section 319, says: "A judicial construction of a statute becomes a part of it, and as to rights which accrue afterwards it should be adhered to for the protection of those rights. To divest them by a change of the construction is to legislate retroactively. The constitutional barrier to legisla-

tion impairing the obligation of contracts applies also to decisions altering the law as previously expounded so as to affect the obligations of existing contracts made on the faith of the earlier adjudications.''

The case of *Farrior* v. *New England Mortgage Security Co.*, 88 Ala. 275, is in point here. In that case Farrier and his wife executed to the company a mortgage on lands held by the wife to secure a loan, at a time when it was held by the Supreme Court of Alabama that she had power, under the statutes of that State, to so encumber her land. After the execution of the mortgage, and before suit was brought to foreclose it, the court overruled the cases holding that she had power to encumber her separate real estate in this mode, and deciding that she had no such power. It was held in the suit to foreclose the mortgage that the later decisions could not affect the validity of the mortgage, which was valid under the construction placed upon the statutes of Alabama at the time such mortgage was executed.

Had this court adhered to its former rulings, to the effect that the second or subsequent wife took a life estate only in the lands of her husband, in case she had no children by him, where he died leaving children by a former wife, there would be no question as to the title of the appellants to the land in dispute.

We are of the opinion that their rights are to be determined under the law as it was declared by this court at the time the appellants sold and conveyed the land. Such being our conclusion, it follows that the circuit court erred in its conclusions of law upon the facts stated in its special finding.

In answer to the position that this conclusion is in conflict with the case of *Bryan* v. *Uland, supra,* it may be remarked that the conclusion in that case was reached by following the general rule applicable to a change in

the rulings of the courts of last resort, where the construction of a statute is not involved.   The exception to this general rule, it seems, was not considered.   Had the court's attention been called to this exception, there is no reason to doubt that the conclusion would have been different.

In so far as the opinion in the case of *Bryan* v. *Uland*, *supra*, may be in conflict with this opinion, it is modified.

It appears that the appellees Elizabeth Pearce, Hester A. Mitchell, and Mary E. Jarrett have never parted with their interests in the land.   They are, consequently, entitled to judgment for their respective interests.

Judgment reversed, with directions to the circuit court to re-state its conclusions of law on the facts found, and render judgment thereon for the appellants as against all the appellees except Elizabeth Pearce, Hester A. Mitchell, and Mary E. Jarrett.

Filed Feb. 16, 1893; petition for a rehearing overruled April 26, 1893.