## MICKELS ET AL. *v.* ELLSESSER ET AL.

[No. 18,332.    Filed February 3, 1898.]

DESCENT.—*Widow Remarrying.—Rights of Under Statute of 1852.—Partition.—Quieting Title.—*A married woman, holding real estate by virtue of a previous marriage, could not, during such marriage, under the statute of descents in force from 1852 to 1879, 1 Davis R. S. 1876, p. 411, alienate the same; and a judgment quieting title to real estate held by a married woman by quitclaim deed from the other heirs, in division of her deceased husband's real estate, made prior to the amendment of such statute, and adjudging her to have an absolute fee simple title, without any restraint upon her right to alienate the same, was erroneous, notwithstanding such deeds of partition were made in pursuance of an oral agreement, for the purpose of vesting in each a fee simple title absolute.

From the St. Joseph Circuit Court. *Reversed.*

*A. L. Brick,* for appellants.

*J. P. Creed* and *Talbot & Talbot,* for appellees.

JORDAN, J.—The appellee, Emeline Ellsesser, together with her husband, co-appellee herein, instituted this action against the appellants, Mary and Peter

Mickels, her husband, to quiet title to a certain described tract of land, containing fifty acres, situated in St. Joseph county, Indiana.   There was a special finding of facts, and conclusions of law thereon, by the court, in favor of the appellee, to the effect that she held an absolute fee simple title to the land in suit, without any restraint upon her right to alienate the same, and was entitled to have her title quieted as against the appellant, Mary Mickels; and judgment was rendered that her title be quieted, and she was adjudged to have an absolute title in fee simple to the land in question, freed from any restraint upon her power of alienation.

The facts found by the court, upon which the judgment is based, are the following:   John Doyle, Sr., in the year 1854, died, intestate, at St. Joseph county, Indiana, the owner in fee simple of two hundred and twenty-eight acres of land situated in said county, of which the premises described in the complaint and judgment formed a part.   Doyle left, surviving him, as his widow, Emeline Doyle (now Emeline Ellsesser, the appellee), and three children, Mary Doyle (now Mary Mickels, appellant), Rosa Doyle, and John Doyle, Jr., all three being the issue of the marriage with appellee.   Mrs. Doyle, the widow, in 1857, was again married to Charles Ellsesser, her present husband and co-appellee, and Mary Doyle, the appellant, in 1867, was married to Peter Mickels, her present husband and co-appellant.   John Doyle, Jr., died in 1868, intestate, leaving his mother, the appellee, and his two sisters, the appellant and Rosa Doyle, as his only surviving heirs.   In 1869, Rosa Doyle died, intestate, leaving her sister and mother, appellant and appellee, as her only surviving heirs.   No administration was had upon the estate of John Doyle, Sr., nor upon those of his two deceased children, and the said real estate re-

mained undivided until 1870. In October of that year, it was orally agreed by and between Mrs. Ellsesser and her husband (appellees), and Mrs. Mickels and her husband (appellants), that they would partition the said lands by the means of quitclaim deeds, for the purpose of vesting in each other an absolute fee simple in certain parts of the lands, which they then held undivided under the titles aforesaid stated. In pursuance of the said oral agreement, on October 13, 1870, appellants executed to the appellee Emeline Ellsesser a quitclaim deed to certain described tracts embraced in the 228 acres of land, one of said tracts containing fifty acres, being the same land involved in this action, and the other containing twenty-four acres, making a total of seventy-four acres quitclaimed by the appellants to the appellee Mrs. Ellsesser. The appellees, at the same time, by their deed, quitclaimed to the appellant Mary Mickles certain described tracts out of said 228 acres, amounting in all to 154 acres. The court finds that, at the time the said quitclaim deeds were executed, it was orally agreed and understood by the parties that the real estate described in each of said quitclaim deeds was to be held by each of said parties, respectively, by an absolute fee simple title, with full power of alienation. The quitclaim deeds are set out in the special finding, and each recites that the respective grantors quitclaim the land therein described for the sum of $500.00, but there is no agreement nor statement contained therein in respect to the partition of the lands, nor as to the manner in which the same are to be held by the parties. The appellants, before the beginning of this action, sold and quitclaimed to George Fountain all of the lands allotted to Mrs. Mickels in the said partition, and appellees, before the commence-

ment of this action, sold and conveyed the twenty-four acres quitclaimed to Mrs. Ellsesser by the appellants; and the real estate involved in this suit is all which she now has of the portion allotted to her under the partition. There is no finding that the appellants, or either of them, are making any claims to the premises herein involved, adverse to the title or claim of Mrs. Ellsesser, or that appellants claim any present right or interest in or to the same.

The sole question presented for our decision is: Do the facts warrant the judgment which the court rendered? It is not controverted by the parties but that upon the death of the ancestor, John Doyle, Sr., his lands descended, one-third to his said widow, and the remainder to their three children; that subsequently, by the death of the two children, the mother, Mrs. Ellsesser, and the sister, Mrs. Mickels, became seized equally by inheritance from these deceased children of the undivided interests which they had in the real estate, and therefore, after the death of these children, Mrs. Ellsesser was invested with an additional one-fourth, making her entire undivided moiety equal to seven-twelfths of the whole tract owned and held by John Doyle, Sr., at his death; and that Mrs. Mickels was the owner of the remainder; and that the land was held by the parties by these undivided shares as tenants in common, at the time the division was made, in October, 1870. The contention of counsel for appellants is that by reason of the fact that Mrs. Ellsesser, after the death of her first husband, intermarried with her co-appellee, holding the real estate in controversy in virtue of her previous marriage, she was interdicted by the statutes of descents then in force from making any conveyance or disposition of her interest in the land which she acquired as the widow of Doyle, and that the court, under the facts, had no power to

relieve the appellee from the restraint of alienation imposed by a positive statute. Counsel for the appellees insist that the quitclaim deeds are shown by the facts to have been executed by the parties for a twofold purpose. First, for the purpose of dividing the land; second, for the purpose of vesting in each a fee simple title absolute; that as the deeds were made in pursuance of the oral agreement stated in the court's finding, and inasmuch as appellant and appellee, under the agreement, accepted the particular portion of the land conveyed to each, consequently, neither can be heard to call in question the title of the other.

Section eighteen of the statutes of descents, in force since 1852, and which remained unchanged until 1879, reads as follows: "Sec. 18. If a widow shall marry a second or any subsequent time holding real estate in virtue of any previous marriage, such widow may not, during such marriage, with or without the assent of her husband, alienate such real estate, and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be." 1 Davis R. S. 1876, p. 411. This section was materially changed and amended in 1879, and, as now in force, it constitutes section 2641, Burns' R. S. 1894 (2484, R. S. 1881). This change or amendment of the law does not affect the question involved in this appeal, and it must be controlled by the law as it existed at the time the partition of the land was made, in October, 1870. *Wright* v. *Wright,* 97 Ind. 444; *Haskett* v. *Maxey,* 134 Ind. 182. This section of the statute relating to descents and the apportionment of the estates of deceased persons has been frequently considered and construed by this court, and the holding under the original act has uniformly been that all deeds, mortgages, or agreements made during the second

marriage by the former widow, in regard to the land
which she held in virtue of her previous marriage,
which were directly or indirectly in contravention of
this statute, were therefore absolutely null and void.
The law as it stood prior to 1879, was construed as
having a two-fold object: First, to tie the hands of the
woman during her second marriage, and thereby pro-
tect her from improvident and injudicious alienations;
second, to preserve the property for her children in
virtue of the marriage by which she received it.  See
*Vinnedge* v. *Shaffer*, 35 Ind. 341; *Connecticut Mutual,
etc., Co.* v. *Athon*, 78 Ind. 10, and the many cases there
cited.   In the case of *Avery* v. *Akins*, 74 Ind. 283, after
the second marriage, partition was made of the lands,
which descended from a former husband, among his
widow and the children of the previous marriage.
During this second coverture, the woman, by her
warranty deed, in which her husband joined, at-
tempted to convey the land allotted to her in severalty,
for a valuable consideration to her paid.  One of the
children by the previous marriage, being the only
one then living, consented to the conveyance, and, on
attaining full age, executed a quitclaim deed to the
purchaser for the purpose of ratifying the conveyance
which her mother had made, and for the purpose of
passing all of her present or expectant interest in the
land, and in order to free it from any claim or demand
of the said child. The mother subsequently died, during
her second marriage, and the daughter received from
the stepfather $1,300.00, being the balance of the pur-
chase money which the mother had received, and left at
her death unexpended, which money the daughter ac-
cepted with the full knowledge of the source from
which it had been derived.   It was held in that case
that the daughter was not estopped to claim title to
the land by descent from the mother, and could

successfully maintain an action for the recovery thereof. There is no question but what the one-third interest in the land which the appellee inherited from her husband was a fee simple, which at any time, if not under a subsequent coverture, she could have fully and freely conveyed or disposed of as she saw proper, notwithstanding the fact that there were children of the previous marriage. But during any subsequent marriage, prior to the modification of the law in 1879, her right to alienate such interest in the land, or to dispose of it in any manner, directly or indirectly, was absolutely suspended or prohibited by the positive command of the statute; and, in the event she died during such coverture, the land would go to the child or children of the former marriage, in virtue of which she obtained it, without regard to any attempt of alienation or dispositon upon her part. *Avery* v. *Akins, supra; Irey* v. *Mater,* 134 Ind. 238; *Horlacker* v. *Brafford,* 141 Ind. 528.

It is true that the rigor of the rule originally prescribed by the statute, and on which the earlier decisions of this court are founded, has been changed and modified, as we heretofore said, in two material respects, by the amendment of 1879: First. The former widow, during the subsequent marriage, together with her husband, may alienate the land, provided the child or children of the previous marriage, are of full age, and join in the conveyance. Second. She and the husband may also dispose of it where there are no children or their descendants of the previous marriage in virtue of which she acquired such real estate. While, under the statute as it stood prior to the time it was modified, the appellee was absolutely forbidden during her subsequent marriage to make any direct or indirect alienation of the land which came to her by the previous marriage, nevertheless during such

coverture partition of the real estate could, under the law, have been enforced between her and the appellant with whom she held the realty as a co-tenant. *Finch* v. *Jackson*, 30 Ind. 387; *Bumgardner* v. *Edwards*, 85 Ind. 117, and cases there cited. It is a general rule of the law that parties may voluntarily and legitimately do without a suit whatever the law will compel them to do in an action through the judgment of the court. Consequently, the right of the appellant and appellee to sever the unity of possession by making a division or allotment of their respective moieties by the means of quitclaim deeds cannot be controverted. A voluntary partition of land made by persons under legal disabilities will be upheld as binding when the same has been fairly and equally made, and is free from all taint of fraud in its inception and consummation. Freeman on Cotenancy and Partition, sections 412 and 415. The partition made by these parties in 1870, so far as it was a reasonably fair and equal allotment, in value, of the undivided interest which each held in the land, was in harmony with the law; and the quitclaiming by the parties to each other for that purpose cannot be said to have been an alienation of the land in violation of the statute. The result of the partition made under the quitclaim deeds in question did not vest in either of the parties any new or additional title, but, after the consummation of the division, each held the portion of the realty allotted to her by precisely the same title, and subject to all the burdens and restrictions by which she formerly held her undivided interest or share. The rule generally affirmed is that partition of real estate, whether made under the judgment of a court or by the means of partition deeds, gives to the tenant no new or different title. *Avery* v. *Akins, supra; Bumgardner* v. *Edwards, supra; Thorp* v. *Hanes*, 107 Ind. 324. The

right of the appellee, however, to make partition and thereby have her interest in the land apportioned to her in severalty, did not carry with it the power or right, under the circumstances, to enter into any oral or written agreement with the appellant for the purpose of relieving or exempting her from the restraint which the law, as it then stood, imposed upon her right of alienation; and no consideration which the appellant may have received, or any agreement into which she may have entered, can serve to operate in contravention of the statute. Consequently, the fact that there was an agreement, either oral or written, between the appellant and appellee, under the circumstances, to the effect that the land quitclaimed by one to the other was to be held by each in fee simple absolute, with full power of alienation, can exert no influence whatever upon the decision of the question here in issue. That this proposition is true, we think, there can be no contrariety of opinion. The right which Mrs. Mickels possessed to convey or dispose of her interest in the land, was not subject to any restriction under the law, and she could alienate it at will, provided her husband joined her in the conveyance. The appellee had equally the same right and power in regard to the interest in the land which she inherited from her deceased children.

It is insisted upon the part of counsel for the appellant, however, that the decision of this court in the appeal of *Fugate* v. *Payne,* 130 Ind. 281, is controlling upon the question here involved. The conveyances in that case were made after the law was modified by the amendment of 1879; and while that cause, under the facts and the law as it then existed, was correctly decided, still that decision can have no bearing upon the case at bar. While appellants, under the statute as now modified, might voluntarily join appellees in a

conveyance of the land, and thereby effect an alienation, and bar the expectancy of Mrs. Mickels in the property, nevertheless there is no law that will compel them to do so; neither does the law, under the facts, authorize the court, by its decree, to relieve the appellee from the inhibition of the statute, and thereby involuntarily bar and deprive the appellant of her expectant interest in the land in the event of her mother's death during a subsequent coverture. There is nothing disclosing that any of the interest which the appellee acquired from her two children is embraced in the land in controversy; hence we do not consider the case upon any theory in respect to this feature.

Possibly there are equities in the case in favor of the appellee which the record does not disclose; but these in such a cause as this, the court is not permitted to consider, and the law must be accepted and applied as enacted with all its rigor. It follows that the judgment cannot be sustained, and it is therefore reversed, and the cause remanded to the lower court, with in structions to vacate its judgment, and grant appellants a new trial.

HOWARD, C. J., did not participate in the decision of this case.