Habig *et al. v.* Dodge *et al.*

Judgment affirmed.

Filed Jan. 28, 1891.

No. 14,400.

Habig ·et al. *v.* Dodge et al.

Descent.—*Childless Second Wife.—Interest of as Widow.—Forced Heirs.*— Prior to the act of March 11, 1889, a childless second wife took an interest equal to the undivided one-third in fee simple in her deceased husband's real estate. During her lifetime the children of her husband had no vested estate in the property which descended to her, but at her death they became her heirs by compulsion of law.

Same.—*Partition.—Title not in Issue.*—In a suit for partition by one of the children of the deceased husband against the widow and the other children, if the title is not directly put in issue by the pleading, a decree adjudging the widow was entitled to an estate for life is not conclusive as to her interest.

Same.— *Warranty by Heirs Apparent.*—Where one of the children of the deceased husband executes a warranty deed to her expected interest in the widow's one-third and dies before the widow, such warranty deed does not bind her children, and they are not estopped to set up their title as the heirs of the widow, at the widow's death.

Same.— *Warranty Deed.—Estoppel.*—Where one of the children assumes to convey and warrant the title to a reversionary interest equal to the undivided one-third of the real estate previously set off to the widow, the grantee acquires by the deed a one-third interest in the land, subject to the estate of the widow and the grantor, and all those claiming through him are estopped to assert the contrary.

From the Gibson Circuit Court.

*C. A. Buskirk, T. R. Paxton, R. D. Richardson, J. T. Walker, L. C. Embree* and *G. Palmer,* for appellants.

*J. H. Miller, J. E. McCullough* and *A. P. Twineham,* for appellees.

MITCHELL, J.—The facts upon which the decision in this case depends are undisputed. They show that Samuel Shannon died intestate, in the year 1857, seized of certain real estate in Gibson county. His widow, Louisa Shannon, a second wife, by whom he had no children, and two sons, William W. and Andrew, and a married daughter, Ophelia, children by a former marriage, survived him as his only heirs. As the result of a partition suit, instituted in 1858, what is alleged to be an estate for life in the real estate involved in this controversy, was set off to the widow, as part of the interest to which she was entitled under the statute, in the real estate of her deceased husband. In the same proceeding certain lands were also set off, in fee simple, to each of the other heirs. In 1860, during the lifetime of his stepmother, William W. Shannon, executed a deed, with covenants of warranty, whereby he conveyed, by proper description, the lands set off to him, to his brother Andrew. He also undertook, by the same deed, to convey his interest, or supposed interest, in the lands set off to his step-mother, which interest he described in the following language: "Also, all the reversionary right, title and interest, of the said William W. Shannon in and to sixty acres off the south part of said northeast quarter of said section numbered seventeen; all of said lands being in township numbered two south, range numbered ten west; also, the undivided third part of the south half of lot numbered thirty-three, in the original plat of the town of Princeton, in said county, subject to the dower of Mrs. Louisa Shannon, it being the intention to convey all the estate of said William W. Shannon, set off to him in partition of real estate of Samuel Shannon, deceased, in said sections, and his interest in the lands set off to said Louisa Shannon, as her dower in said partition." The deed contained the following covenants: " The grantors, their heirs and assigns, hereby covenanting with the grantee, his heirs and assigns, that the title so conveyed is free, clear, and unencumbered; that they are lawfully seized of the premises

aforesaid as of a sure, perfect, and indefeasible estate of in-
heritance, in fee simple, and that they will warrant and de-
fend the same against all claims whatsoever." The appel-
lant Paul Habig claims title to the interest of William W.
and Andrew Shannon, in the lands set off to their step-mother
through mesne conveyances from Andrew, who died intes-
tate and unmarried in 1861, after receiving the conveyance
from William W., and prior to the death of his step-mother.
The appellant Stormont claims title through mesne convey-
ances from Ophelia Evans and her husband, to the sup-
posed interest of the former in the land set off to her step-
mother, the conveyance by Ophelia and her husband having
been made in 1868, during the lifetime of the widow, her
deed containing full covenants of warranty. Ophelia died
in 1876, leaving Alice Dodge and three other children as her
heirs.

The widow, Louisa Shannon, died in 1884, and in 1886
William W., the only surviving child of Samuel Shannon,
executed a second conveyance, upon a nominal consideration,
by which he conveyed his interest in the land set off to his
step-mother, to Wm. T. Turner, through whom the appel-
lant John R. Green claims title to the undivided one-half
of the tract in dispute.

This suit was brought to obtain partition of the land in
dispute by the children of Ophelia Evans, who claim the un-
divided one-half of the land set off to the widow of their
grandfather, Samuel Shannon, their claim being that they
take from the widow as heirs, notwithstanding the warranty
deed of their mother. Habig, Stormont and Green were
made parties.

Upon the foregoing facts the court found that the plain-
tiffs were the owners of the undivided one-half of the land
in controversy; that Green was the owner of an undivided
one-third, and that Habig and Stormont were each the

owners of an undivided one-sixth. Habig, Stormont and Green prosecute this appeal.

It may be observed that by the express terms of section 4 of the act of March 11th, 1889 (Elliott's Supp., sections 423–426), the provisions of this latter act do not apply to any case where the second childless wife had died, and the estate had become vested in the heirs of the deceased husband before the act took effect.

The controversy is to be determined, therefore, according to the statutes in force in 1884, when Louisa Shannon died, and the interest or estate of her heirs, the children of her deceased husband became vested.

It must now be regarded as settled by the decisions of this court, that, under the statute which controlled the judgment in the present case, one-third of the real estate of which a husband died seized descended in fee simple to his widow, free from all demands of creditors, without regard to whether she was the first or second wife, provided, however, if she were a second or subsequent wife without children, there being children alive by a previous wife, the descent of the land which at the husband's death vested in fee simple in his widow, was absolutely restricted to his children. The estate which a widow took in the lands of her deceased husband was precisely the same whether she was a first or second wife, the only distinction being that the statute in certain cases controlled the line of descent, so that in case of a second or subsequent childless wife, the living children of the deceased husband by a former wife, became by compulsion of law the heirs of the second wife at her death, and inherited the lands which the statute cast upon her at the death of her husband. The policy of the law lies upon the surface of the statute, and its eminent justice and propriety are apparent.

It was intended, while accomplishing ample justice to the childless widow, to prevent the possibility of the estate, which presumably the first wife had assisted in acquiring, being cast by inheritance, or otherwise, upon persons who

might be strangers to her blood, as well as the blood of her husband, to the exclusion of their children whose industry and frugality may have contributed to the acquisition of the property.

The decisions of this court, accepting the statute according to its evident purpose and policy, have settled it firmly as anything can be settled by judicial determination, that the childless widow took an interest equal to the undivided one-third in fee simple in her deceased husband's real estate, and that during her lifetime the children of her husband had no vested estate in the property which descended to her; that they occupied precisely the attitude of other expectant heirs toward the property of their ancestor, except that the ancestor, the childless widow, had no power to defeat the expected inheritance. The question has arisen in almost every conceivable shape, and the rulings uniformly are, that during the lifetime of the widow the husband's children have no interest which can be affected by any order or judgment of a court, nor by a conveyance made by them nor by their guardian, unless it contain covenants of warranty or their equivalent, pursuant to an order of court. *Gwaltney* v. *Gwaltney*, 119 Ind. 144; *Erwin* v. *Garner*, 108 Ind. 488; *Thorp* v. *Hanes*, 107 Ind. 324; *Avery* v. *Akins*, 74 Ind. 283; *Bryan* v. *Uland*, 101 Ind. 477, and cases cited.

This is upon the principle which prevails almost universally that judgments affecting the title to real estate, and conveyances without covenants, are ordinarily confined in their operation to the interest held by the parties to the suit or grantors in the deed at the time the judgment is pronounced or conveyance executed, and affect only existing titles and not those subsequently acquired. Freeman Cotenancy and Part., section 532.

Something has been said about the conflict between the earlier and the later decisions of this court, which define the interest which a childless second wife takes, or took, under the statute in the real estate of her deceased husband. There

is no substantial disagreement in the decisions. . In some instances the estate of the wife or widow was described as a life-estate, but the principle that the husband's children by the first marriage take by descent from the childless second wife has never been denied in any case to which our attention has been called.

On the appellants' behalf it is contended that the title to the real estate in question was adjudicated in the partition suit, and that because it was alleged by way of recital in the complaint for partition, and found and adjudged by the court, that Louisa Shannon, as widow of Samuel Shannon, was entitled to an estate for life in the land in dispute, the plaintiffs below are estopped to deny that the children of Samuel Shannon were not the owners of the fee.   It is true that after setting out the death of Samuel Shannon in the complaint for partition, and alleging that he died seized of certain real estate, and that he left a childless second wife and three children, who are named by a former marriage as his only heirs, the pleader avers that the widow was entitled, upon the facts stated, to an estate for life, equal in value to the one-third of the real estate of which Samuel Shannon died seized.   The averment of the pleader respecting the character and quantity of the estate to which the widow was entitled, was merely a mistaken conclusion of law drawn from the precedent facts, which were accurately and fully set out, and as there were no other pleadings except such as are ordinarily employed in partition proceedings, and no decree except the ordinary one directing that partition be made, and describing the interest of the widow as an estate for life, it can not be said that the respective titles of the parties were put in issue and adjudicated.   *Miller* v. *Noble,* 86 Ind. 527, and cases cited ; *Bryan* v. *Uland, supra ; Avery* v. *Akins, supra.*   On the contrary, any one examining the record of the proceedings in partition would find indisputable evidence on the face thereof that the estate which the widow took was a fee simple, with the power of alienation

restrained and limited, and with the descent fixed by public statute law.

The present case is not distinguishable from *Kenney* v. *Phillipy*, 91 Ind. 511, in which facts strongly analogous to those under consideration were involved. Speaking of the facts which ruled the decision in that case, the court said : " During the lifetime of the children of John Coble, Margaret Coble instituted partition proceedings, and judgment was entered, partitioning the land, awarding to her the life-estate, and to John Coble's children the fee, and this decree is relied upon as estopping her grantee from claiming title. It is the law of this State that an ordinary judgment of partition does not create title, but simply makes division of the land. * * It is also the law, as these cases show, that the judgment in such a case does not operate upon after-acquired titles, and here the reversionary title of Margaret Coble was acquired after the death of John Coble's children. It is no doubt true, that an issue may be framed, directly presenting for decision, the question of title, and when such an issue is framed and directly adjudicated, the judgment will be conclusive."

This doctrine is enunciated in many other decisions of this court, and must now be regarded as a rule of property to be changed only by legislative intervention. *Matthews* v. *Pate*, 93 Ind. 443 ; *Fleenor* v. *Driskill*, 97 Ind. 27.

Title can only be put in issue by appropriate averments in the pleadings. *Luntz* v. *Greve*, 102 Ind. 173 ; *Pipes* v. *Hobbs*, 83 Ind. 43. Where the only issue presented by the pleadings is whether or not there ought to be partition of the land among the several alleged owners, according to their respective interests, the title to the land is not in issue. A decree taken upon issues thus made is conclusive as an estoppel, so far as to settle and bind the present interest of all those who are parties according to the terms of the decree, but it does not operate upon or affect, or estop parties from setting up after-acquired titles.

Where an existing special title is pleaded and settled by the decree, parties to the record are concluded by the averments in the pleadings, and are estopped to deny the validity of the title pleaded. *L'Hommedieu* v. *Cincinnati, etc., R. W. Co.,* 120 Ind. 435.

This is the rule in this State, and it is now too firmly settled by our decisions to be departed from without producing confusion in titles to land.

It is insisted next that inasmuch as Ophelia Evans, in her lifetime, conveyed the land by deed containing full covenants of warranty, the plaintiffs are estopped by the covenants in the deed of their ancestor.

Waiving any consideration of the question whether or not a married woman would be estopped from setting up an after-acquired title as against the covenants in a deed executed by her prior to the statute of 1881, it is sufficient to say the plaintiffs do not claim title through their mother. Ophelia Evans never had any vested interest in or title to the land in dispute, her death having occurred before that of her step-mother. Upon her death the plaintiffs, as her children, became the expectant heirs of the childless widow of their grandfather, and upon the death of the widow the law cast the estate immediately upon them, as her compulsory heirs, in the stead of their mother. *Scott* v. *Silvers,* 64 Ind. 76. Their relationship to Louisa Shannon, the widow of Samuel Shannon, came to the plaintiffs through their mother, Ophelia Evans, but the title to the land did not come through her ; that came immediately by descent from Louisa Shannon, wholly unaffected by any conveyance made by their mother, who never had any estate whatever in the land.

The modern rule in respect to covenants seems to be that they affect the grantor only, unless, first, the heir had assets from him, and then only to the extent of the assets ; or unless, secondly, the heir claim the land as heir of the grantor. *Carson* v. *New Bellevue Cemetery Co.,* 104 Pa. St. 575 ; *Utterback* v. *Phillips,* 81 Ky. 62 ; Bigelow Estoppel, 389. Both

Habig *et al. v.* Dodge *et al.*

elements necessary to affect the plaintiffs, either upon the principles of rebuttal or estoppel, are absent in the present case. So far as appears they neither received assets from their mother, nor do they claim the estate as her heirs.

The deed of an heir apparent, by which he seeks to convey an estate in expectation, may, under some circumstances, operate by way of estoppel against him, but it can not operate to the prejudice of those who, upon his death, prior to that of the ancestor, through him, become heirs of the latter in his stead. *Bohon* v. *Bohon,* 78 Ky. 408.

A warranty in a deed made by a stranger to the title, who has no estate to which the warranty can attach, is wholly inoperative as against one who does not claim through him. Rawle Covenants (5th ed.), section 254.

The law looks with disfavor upon sales by an heir apparent of his possible or expected interest in the estate of his ancestor during the lifetime of the latter. *McClure* v. *Raben,* 125 Ind. 139.

It would look with abhorrence upon a transaction, the effect of which would cut off the lawful inheritance of his children in the estate of his father, after his death, when the heir apparent had nothing more than a mere expectation, which he never realized.

The remaining question relates to the effect to be attributed to the deed made by William W. Shannon to his brother Andrew in May, 1860. It is insisted on the one hand that this deed effected a conveyance by way of estoppel, and that the estoppel extends to the entire interest which is now claimed by the appellant John R. Green, through William W., by a later conveyance made in 1886, after the death of the widow. On the other hand, the argument is that the conveyance from William W. to Andrew Shannon, being of the "right, title and interest" of the grantor in the real estate in dispute, is in effect nothing more than a quitclaim deed, that it was inoperative to convey anything more than the interest which the grantor then had, that as it was made

during the lifetime of the widow, when he had no interest to convey, it left his subsequently acquired title wholly unaffected to pass by the subsequent deed through which Green claims.

The general proposition is abundantly maintained that a deed of release or quitclaim, or a conveyance of the "right, title and interest" of the grantor, even though it be with full covenants of warranty, without designating in the instrument any particular estate, either as owned by the grantor or as conveyed by the deed, operates simply to transfer whatever interest the grantor may have had at that time. *Locke* v. *White,* 89 Ind. 492, and cases cited; *Bryan* v. *Uland, supra.* The addition of covenants of warranty does not enlarge the granting clause in the deed, the general rule being that the covenants are restrained by and are only coextensive with the granting clause.

.The rule in respect to the point in question is thus stated in Rawle Covenants (5th ed.), section 250: "So where the deed, although containing general covenants for title, does not on its face purport to convey an indefeasible estate, but only 'the right, title and interest' of the grantor; there, in cases where those covenants are held not to assure an absolute title, but to be limited and restricted by the estate conveyed, the doctrine of estoppel has been considered not to apply; in other words, although the covenants are as a general rule deemed to be invested with the function of estoppel in passing an after-acquired estate by mere operation of law, yet they will lack that effect when it appears that the grantor intended to convey no greater estate than he was really possessed of." *Hanrick* v. *Patrick,* 119 U. S. 156 (175).

Where, however, a deed containing covenants, bears upon its face evidence that the grantor intended to convey an estate of a particular description or quality, then the prevailing doctrine is, even though the covenants may be technically imperfect and informal, the grantor and those claim-

ing through him, will be bound in respect to the estate described to the extent, at least, of being estopped to say that the grantor was not seized of the particular estate at the time of the conveyance. *Nicholson* v. *Caress*, 45 Ind. 479 (485); *Van Rensselaer* v. *Kearney*, 11 How. 297 (301); *Hannon* v. *Christopher*, 34 N. J. Eq. 459.

The reason is, that if, upon the face of the deed, there is an express or implied representation that the grantor is presently seized of the particular estate which he assumes to convey, and warrants, it will be presumed that the bargain between the parties proceeded upon the footing that he owned the estate described. If it turns out that he is not the owner, whether it result from honest mistake or otherwise, he will be estopped from setting up an after-acquired title of the same character as that described, to defeat his own previous grant. Tiedeman Real Property, section 727.

Turning to the deed in question, and by fair implication it appears upon the face of the instrument that the grantor assumed to convey and warrant the title to a reversionary interest equal to the undivided one-third of the real estate previously set off to the widow. It is evident that the parties dealt upon the footing that the grantor bargained and sold, and that the grantee acquired by the deed, a one-third interest in the land in dispute, subject to the estate, or supposed estate, of the widow. In equity and good conscience the grantor, and all those claiming through him, should now be estopped to assert the contrary.

As the judgment of the court below was, in all respects, in consonance with the principles herein enunciated, that judgment is, in all things, affirmed, with costs.

Judgment affirmed.

Filed Sept. 20, 1890; petition for a rehearing overruled Jan. 28, 1891.