BELL ET AL. *v.* SHAFFER ET AL.

[No. 18,698.   Filed Feb. 15, 1900.   Rehearing denied March 30, 1900.]

EXECUTORS AND ADMINISTRATORS.—*Sales of Real Estate.—Decedents' Estates.*—An administrator procured an order of court directing the sale of the undivided two-thirds part in value of certain described real estate, being exclusive of the widow's interest, and by virtue of such order sold the real estate at public auction. Two months thereafter he filed an amended petition, which the court permitted to be filed as of date of the original petition, alleging that the widow was a childless second wife. On the same day the administrator reported the sale of the real estate, and the court confirmed the same, and ordered that the administrator settle with the widow and allow her a fair compensation for her interest in the property, and that her interest therein be "exterminated" before the purchaser be required to pay all of the purchase money, and the administrator afterward reported a receipt from the widow stating that the sum so paid was in full of her dower in the real estate. *Held,* that the action on the amended petition was illegal and void, and whatever title was acquired by the purchaser was obtained under the first order. *pp. 414-422.*

SAME.—*Sales of Real Estate.—Childless Second Wife.—Decedents' Estates.*—The court of common pleas had no jurisdiction, under R. S. 1852, to order the sale of more than two-thirds of a decedent's real estate for the payment of the claims of general creditors, where the decedent left surviving him a childless second or subsequent wife. *p. 422.*

SAME.—*Sales of Real Estate.—Childless Second Wife.—Decedents' Estates.*—Children by a former marriage have no present estate in the interest of a childless second or subsequent wife in the real estate of their father, and they cannot object or defend against the sale thereof for the payment of debts. *p. 423.*

LIMITATION OF ACTIONS. — *Decedents' Estates. — Childless Second Wife.*—Since the title of the children by a former marriage to the interest of a childless second or subsequent wife in the real estate of their father does not vest until her death, their right to maintain an action for the recovery thereof is not barred by the statute of limitations previous to her death. *p. 424.*

PARTITION.—*Attorney's Fees.*—Section 1222 Burns 1894 providing for the taxing of attorney's fees in a partition proceeding against all of the parties is not mandatory, but such taxation is to be awarded in such proportions against each of the parties as the court may determine. *pp. 424, 425.*

---

Bell *v.* Shaffer.

---

From the Marion Superior Court. *Affirmed.*

*J. W. Kern* and *T. L. Sullivan,* for appellants.
*F. E. Gavin, C. F. Coffin, T. P. Davis* and *W. Booth,* for appellees.

DOWLING, J.—Suit for partition by appellees against appellants, the former claiming to be the owners in fee of the undivided one-third of lot number forty-four, in Sorin's subdivision, etc., in the city of Indianapolis, and State of Indiana. The defendants answered in four paragraphs, the first being a general denial, and the second, third, and fourth setting up the defenses of an estoppel by matter of record, by matter *in pais,* and the statutes of limitations of five, fifteen, and twenty years. Reply in denial. The appellant, Joseph E. Bell, filed his separate cross-complaint against the appellees, asserting title to the whole of the lot described in the complaint, and asking to have the same quieted. Answer in denial.

At the request of the parties, the court made a special finding of facts, with its conclusions of law thereon. Appellants separately excepted to each conclusion of law. They also filed their separate motions for a *venire de novo,* and for a new trial. These motions were overruled, and judgment was rendered on the finding in favor of appellees. Errors are assigned upon the several conclusions of law, and upon the rulings of the court on the motions for a *venire de novo,* and a new trial.

The facts found by the court may be summarized as follows: One Charles O. Fry, an inhabitant of Hamilton county, Indiana, died intestate, in March, 1868, seized in fee simple of lot number forty-four in Sorin's subdivision of out lots numbers 175 and 176, in the city of Indianapolis. He left surviving him his widow, Elizabeth Fry, a childless third wife, and seven children by former marriages, viz., Melissa Shaffer, William Fry, Arena Wolf, Isaac Fry, Albert Fry, Oliver Fry and Abraham L. Fry.

Afterwards, one Andrew McKinsey was appointed by the court of common pleas, of Hamilton county, administrator of the estate of the said Charles O. Fry. December 2, 1868, the administrator filed in said court his petition for the sale of said real estate, to make assets for the payment of the general debts of said decedent. The widow and children of the decedent were made parties to this proceeding, and were duly notified of its pendency. A default was taken against the widow, Elizabeth Fry, and against Melissa Shaffer, Arena Wolf, and William Fry, the adult children of the decedent. The infant defendants, Isaac Fry, Albert Fry, Oliver Fry, and Abraham I. Fry, appeared by guardian *ad litem*, who filed an answer in their behalf. The proceedings resulted in an order directing the sale of *"the undivided two-thirds part in value* of the said real estate, being exclusive of the widow's interest." By virtue of the order so obtained, the administrator on October 22, 1869, sold the real estate at public auction to one John D. Evans for $1,800. Two months and twenty days after such sale, to wit, on January 11, 1870, the administrator with the leave of the court filed an amended petition for an order to sell the real estate which had been sold by him October 22, 1869, averring in said petition the insufficiency of the personal estate to pay the debts of the decedent; that the decedent died the owner of the lot in question; that a part of the indebtedness of the estate consisted of State and county taxes to the amount of $200, assessments for street improvements to the amount of $300, and a mortgage debt for the unpaid purchase money of said real estate to the amount of $700, with interest, all of which were liens on said real estate, and that the holders of said claims were threatening, if not paid, to enforce the same against the said lot. It was further alleged in this amended petition that the widow of the decedent was a second, childless wife; that she owned a life interest in said real estate to the one-third part thereof, provided the said encumbrances were paid off;

and that the decedent left, as his only heirs, the children by former marriages already named. The court permitted this amended petition to be filed as of the date of the original petition, to wit, December 2, 1868.

On the same day this so-called amended petition was filed, to wit, January 11, 1870, the administrator filed a report showing that, after proper notice, he had sold the lot at public auction to one John Evans for $1,800, and that the purchaser had paid down $600, and executed his notes for the remainder at nine and eighteen months, with security.

The sale was confirmed by the court, and a further order was made in these words: "It further appearing by the evidence that said real estate, named in the petition, was sold without any regard to the life interest of the widow of said decedent named in the petition, and it further appearing that said widow was the second wife of said decedent, and that the deceased died without leaving any children by her, and he left at his death children by his former wife, alive at his death, and she has only a life interest in the premises.

"And it is therefore ordered by the court that said administrator settle with said widow, and allow her a fair compensation for her interest in the said property, and that said interest is to be *exterminated* before the said John D. Evans, said purchaser, shall be compelled to pay said notes given for said purchase money, as aforesaid, as her interest was not considered and deducted in the sale to him, and said administrator is ordered to execute a deed of conveyance to said purchaser, and said administrator now reports a deed of conveyance of said real estate, so sold to said purchaser, which is examined and approved by the court."

Immediately after the court made the foregoing order, the administrator filed a report, dated January 10, 1870, showing that he had executed to Evans a deed for the premises, and had received from him a mortgage on the same, securing the balance of the purchase money.

The first current report of the administrator, made April

15, 1872, showed that he had received (inclusive of the $1,800 for the real estate so sold, and $75 as rents) $3,537.87; and that he had paid out $3,176.85, leaving a balance of $361.02 in his hands. Among the payments so made was one of $200 to the widow of the decedent, for which she executed a receipt stating that the sum so paid was in full of her dower in the house and lot sold by the administrator to pay debts. Another of the payments made by the administrator, as shown by this report, was one of $900 on account of a debt for the purchase money of a tract of land in Hamilton county.

On the 19th of April, 1873, pursuant to the order of the court, and for the purpose of making assets to pay debts, the administrator sold certain other lands of the decedent, situated in said Hamilton county for the sum of $1,500, and received the purchase money therefor.

The administrator collected some $60 interest, and $131 rents, and on September 3, 1875, he filed his final report, which showed among other things a payment of $240.78 to the guardian of the infant children, and a balance of $456.02 for distribution. The report was approved, the said balance was paid into court, and the administrator discharged.

This balance was ordered paid to Isaac Fry, Arena Wolf, Melissa Shaffer, William Fry, Oliver Fry, Albert Fry, and Abraham L. Fry, in shares of $65.15 each, and the same was received, and receipted for by William Hair, guardian of Abraham, Albert, and Oliver Fry; by William Fry and Isaac Fry in person; by Melissa Shaffer by her attorney in fact; and by Isaac Fry, administrator of the estate of Arena Wolf, deceased.

The administrator was not empowered by any order of the court to rent the real estate of the decedent, but he did in fact collect rents to the amount of $206, which he included in his account, and they were embraced in the final balance reported for distribution.

Arena Wolf, one of said children, died in the year 1874, leaving as her sole heirs two children, William Wolf, and ———— Wolf, the latter of whom died in 1888, leaving his said brother, one of the appellees, his sole heir.

John D. Evans, the purchaser at the sale by the administrator, took possession of said lot number forty-four immediately upon the delivery of the deed therefor to him, and he and his son, Frederick Evans (who, upon his death, inherited all of his interest in said real estate), and Joseph E. Bell, the grantee of Frederick Evans, ever since have been in the open, notorious, peaceable, and exclusive possession of the whole of said real estate, claiming title thereto, receiving all the rents and paying all taxes and assessments against the same as they matured.    The said Frederick Evans, on September 18, 1885, obtained from Elizabeth Fry, the widow of said decedent, a quitclaim deed for all of said Marion county real estate, for which he paid her $450.   The said Frederick afterwards sold and conveyed said lot number forty-four, by warranty deed, to the appellant, Joseph Bell, for a valuable consideration.   Bell bought the property under the belief that he, was obtaining title to the whole of it, but with the knowledge that Evans' title was derived through the administrator's deed before mentioned, and, before his purchase, he was furnished with an abstract of the records showing the title to said lot.   He had heard nothing of the claim of the appellees until the complaint in this action was filed.   Bell expended $400 in remodeling the house, and improving said property, and he paid interest on an assessment for street improvements, and the first instalment of the taxes of 1896, amounting together to $45.37, and there remains unpaid, on account of such street improvement, $742, which is not yet due.   The widow of the decedent died November 24, 1895.

Upon the facts found, the court stated the following conclusions of law:   (1)   That plaintiffs are the owners in fee simple of an undivided one-third of lot number forty-four,

in Sorin's subdivision, in said findings described, subject to one-third, in amount, of said street improvement lien. (2) That partition should be made. That said lot number forty-four cannot be subdivided without injury to the interests of the parties therein. That the whole thereof should be sold. That such sale should be made by a commissioner, to be hereafter appointed, on terms to be provided in the decree. (3) That the proceeds of such sale should be applied to the discharge of the street improvement lien, to the costs hereof accrued, and to accrue, and the balance thereof should be paid, two-thirds to defendant Joseph E. Bell, and one-third to plaintiffs; the last named one-third to be charged with $200 attorneys' fees in favor of plaintiffs' attorney. (4) That defendant, Joseph E. Bell, take nothing by his cross-complaint herein.

The appellants contend that the appellees have no interest in the lot in question, and that the judgment of the Marion Superior Court is erroneous. (1) Because said lot number forty-four, not being susceptible of division, and being encumbered by a mortgage for purchase money, and by liens for taxes and street improvements, the court of common pleas of Hamilton county had jurisdiction to order the sale of the whole of said lot, and that as said court of common pleas also had jurisdiction of the parties, its orders and judgment declaring that the widow held a life estate only, and confirming the sale to Evans, the purchaser, are binding and conclusive. (2) Because the appellees are estopped by their receipt and retention of the purchase money to deny the validity of the sale of the whole of said lot by the administrator. (3) Because the claim of the appellees is barred by the statute of limitations.

The propositions advanced by the appellants cannot be sustained. No petition was filed in the common pleas court of Hamilton county for the sale of the whole of lot number forty-four, for the payment of a mortgage debt for purchase money, or other liens. The proceedings were instituted for

the purpose of obtaining an order to sell such part of the lot as was liable to be sold for the payment of the claims of general creditors. It is true that, upon proper application, the court might have authorized the administrator to sell any of the real estate of the decedent for the payment of the purchase money, or any valid lien thereon. §89 R. S. 1852, p. 269.

But the court was not asked to make such order, and it made no order for the sale of lot number forty-four, or any interest therein, for the payment of purchase money, or any valid lien, and the entry cannot be understood to mean anything of the kind. Nor did the court, at any time, empower the administrator to sell the whole of said lot. The only order authorizing the sale was in these words: "And the court finds that it is necessary to sell said real estate of said decedent to pay the outstanding debts against said estate. And the court does now order and direct said administrator to sell the *undivided two-thirds' part in value, of said real estate* (being exclusive of the widow's interest) to wit, lot number forty-four, etc." Under this order, the administrator was authorized to sell two-thirds only of the lot, and the purchaser at such sale took the lot subject to all liens and encumbrances. *Shriver* v. *Lynn*, 2 How. 43; *Bethel* v. *Bethel*, 6 Bush. (Ky.), 65; *Clarke* v. *Henshaw*, 30 Ind. 144; *Martin* v. *Beasley*, 49 Ind. 280.

The words "being exclusive of the widow's interest" cannot be regarded as increasing the quantity of the lot ordered to be sold beyond the two-thirds in value. By no rule of construction can the order be interpreted to mean that the whole of the lot should be sold, exclusive only of a life estate in the widow.

The filing of a so-called amended petition to sell, more than two months after the sale of the lot had actually been made under the original petition and order, and the entry on the record that the same be treated as filed as of the date of the original petition, were illegal, unprecedented, and void.

But even this last named petition did not ask for an order to sell the whole of said lot, free from the widow's interest, to pay a debt for purchase money, or for the discharge of any valid lien on the same. No order to sell was made upon the last petition, and whatever title was acquired by the purchaser was obtained under the order first made. The sale was at public auction, upon an order directing the sale of two-thirds of the lot. Other bidders, if any were present, must have understood that only two-thirds of the lot would be sold. After the sale, the court had no power by any order or proceeding to make a gift of the remaining third of the lot to the purchaser of the two-thirds. With all of the liberality which can be extended to proceedings of this character, it is impossible to sanction or uphold the attempt of the court, two months after the sale had taken place, to convert a petition for the sale of real estate to pay the general creditors into an application to sell a lot to discharge specific liens; or to enlarge the sale of two-thirds of a lot, so as to include the entire premises. *Angle* v. *Speer*, 66 Ind. 488; *Lewis* v. *Owen*, 64 Ind. 446; *Verry* v. *McClellan*, 6 Gray 535; *Tenny* v. *Poor*, 14 Gray 500.

It is said by Mr. Freeman, in his work on Void Execution, Judicial, and Probate Sales, at page 45, that "Probate sales, we are sorry to say, are generally viewed with extreme suspicion. Though absolutely essential to the administration of justice, and forming a portion of almost every chain of title, they are too often subjected to tests far more trying than those applied to other judicial sales. Mere irregularities of proceeding have, even after the proceedings had been formally approved by the court, often resulted in the overthrow of the purchaser's title. In fact, in some courts, the spirit manifested toward probate sales has been scarcely less hostile than that which has made tax sales the most precarious of all the methods of acquiring title." It may be suggested that the reason for this spirit is not far to seek. The loose and slip-shod methods of many courts of probate juris-

diction in cases where the rights and titles of heirs are involved cannot receive the approval of appellate tribunals when they come under review. While applications for the sale of real estate are nominally adversary proceedings, they are, in fact, in most cases, *ex parte*, the administrator looking after, or being expected to look after, as well the interests of the widow and heirs as the rights of creditors. The widow and adult heirs usually make default, and the minors are represented by a guardian *ad litem*, who appears *pro forma* only. Under such circumstances, to permit the probate court to play fast and loose with petitions and orders, without regard to any rules of law, or orderly procedure, is to encourage a dangerous laxity in practice, and to trifle with the important rights of property. This court has generally been indulgent toward probate sales, but no decision goes to the length of sustaining a proceeding by which heirs at law are devested of their title to real estate without even an order of the court directing the sale of such interest.

But for another and distinct reason, the claim of the appellant to the one-third of the lot must fail. The court of common pleas of Hamilton county had not jurisdiction to order the sale of more than two-thirds of the lot to make assets for the payment of the claims of general creditors. The statute in force at the time of the death of Charles O. Fry, regulating the descent of real estate, was as follows:

"Section 17. If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors; *Provided, however*, that where the real estate exceeds in value $10,000, the widow shall have one-fourth only, and where the real estate exceeds $20,000, one-fifth only as against creditors * * *."

"Section 24. * * * *Provided*, That if a man marry a second or other subsequent wife, and has, by her, no children, but has children alive, by a previous wife, the land which, at his death, descends to such wife, shall, at her death, descend to his children." 1 R. S. 1852, pp. 250, 251.

A construction was given to these provisions of the statute in *Louden* v. *James*, ·31 Ind. 69, in which it was held that when a man dies leaving surviving him a widow, who is a second or subsequent wife, by whom he has no children, but leaving children by a previous wife, the widow, as against creditors, takes the same share of his real estate in fee simple as if a first wife, and at her death that this fee simple descends to the children of the husband, free from the demands of his creditors. This decision was made May 27, 1869, while the sale in question took place October 22, 1869, so that the purchaser at that sale had before him the latest interpretation of the statute, declaring that the one-third taken by the widow was held by her in fee as against creditors, and that, at her death, it would descend to the children of the decedent. This ruling was followed in *Caywood* v. *Medsker*, 84 Ind. 520, and was there declared to have been "the law and rule of property," from the time it was made.

As the petition in this case was for the sale of the real estate to make assets generally, and not to pay a claim for purchase money, or other specific lien, the share taken by the widow was not subject to sale, and the interest of the children of the decedent, by his former marriages, could not be affected by any order or proceeding of the court upon such petition. They had no present estate, but were merely expectant heirs, so that it was not possible for them to object to the petition or order, nor necessary for them to make any defense against the same. *Utterback* v. *Terhune*, 75 Ind. 363; *Armstrong* v. *Cavitt*, 78 Ind. 476; *Bryan* v. *Uland*, 101 Ind. 477; *Habig* v. *Dodge*, 127 Ind. 31; *Byrum* v. *Henderson*, 151 Ind. 102; *Gwaltney* v. *Gwaltney*, 119 Ind. 144; *Pepper* v. *Zahnsinger*, 94 Ind. 88; *Erwin* v. *Garner*, 108 Ind. 488.

The pleas in estoppel are not sustained by the findings or the evidence. The record, as has been seen, contains

nothing which prevented the appellees from asserting their title to the one-third of the lot, which was taken by the widow, and which, at her death, descended from her to them as her statutory heirs. Neither can they be deprived of their inheritance, because a small amount of money, derived from the estate of their father, was distributed to them. It nowhere appears that this money was derived from the sale of the one-third of the lot now claimed by them, but, on the contrary, it is manifest that this one-third was not sold at all under any order of the court. *Flenner* v. *Travelers Ins. Co.*, 89 Ind. 164; *Erwin* v. *Garner*, 108 Ind. 488.

The death of the widow of the decedent did not occur until November 24, 1895. The appellees did not acquire their title to the one-third of the lot until she died, and, of course, could maintain no action for its recovery, or for partition, previous to that event. Their right was not barred by any statute of limitation. *Habig* v. *Dodge*, 127 Ind. 31; *Erwin* v. *Garner*, 108 Ind. 488; *Gwaltney* v. *Gwaltney*, 119 Ind. 144; *Schori* v. *Stephens*, 62 Ind. 441; *Haskett* v. *Maxey*, 134 Ind. 182, 19 L. R. A. 379.

Appellees have assigned as a cross error the conclusion of law that the attorney's fee allowed them should be taxed against their share of the proceeds of the sale of the real estate, instead of being paid out of the whole fund to be derived from such sale. The ruling of the court in this point was clearly right. No reason exists why a defendant in a partition suit, who appears by attorney, to contest the title of the plaintiff, should be compelled to contribute to the payment of the attorney's fees of his adversary, and we can not believe that the statute was intended to subject him to such liability. *Merrill* v. *Shirk*, 128 Ind. 503.

It is said in *Kilgour* v. *Crawford*, 51 Ill. 249: "Where the proceedings are amicable, and the parties defendant do not deem it necessary to employ counsel to protect their interests, it is proper that the power given by this law should be exercised, as all the parties have the benefit of

the partition. But where the defendants deem it necessary to employ counsel, in order to protect their interests, and secure a just partition, or an equitable assignment of dower, we can see no reason why they should be required not only to pay the fees of their own counsel, but also a part of the fees of adverse counsel. * * * In these partition proceedings, the defendants have generally been guilty of no default or wrong."

Section 1222 Burns 1894, under which appellees claim the right to an allowance of attorney's fees, to be taxed against the entire fund, is not strictly mandatory, but such taxation, in any case, is to be awarded in such proportions against each of the parties as the court may determine. *Ex parte Fidelity Ins. Co.*, 108 Pa. St. 339, 1 Atl. 233; *Stempel* v. *Thomas*, 89 Ill. 146; *Stunz* v. *Stunz*, 131 Ill. 210, 23 N. E. 407; *Westmoreland* v. *Martin*, 24 S. C. 238.

Finding no error in the record, the judgment is affirmed.