## FRY ET AL. v. LAWSON ET AL.

[No. 4,576.    Filed February 2, 1904.]

EXECUTORS AND ADMINISTRATORS.—*Sale of Real Estate to Pay Debts.*
—*Childless Second Wife.*—The court of common pleas had no juris-
diction, under R. S. 1852, to order the sale of more than two-
thirds of a decedent's real estate for the payment of claims of
general creditors, where the decedent left surviving him a child-
less second or subsequent wife; but upon proper application the
court could have authorized the administrator to sell any of the
real estate of the decedent for the payment of the purchase money,
or for the payment of any valid lien thereon.   *p. 369.*

SAME.—*Sale of Decedent's Real Estate to Pay Debts.*—*Petition.*—The
owner of real estate died intestate in 1868, leaving a childless second
wife and children by a former marriage. In 1873, while the widow
and children were still living, the administrator of the decedent's
estate filed a petition to sell the real estate, stating in his petition
that at his death deceased "owed nearly all of the purchase
money;" that the administrator had paid $900 of the purchase
money and $3,000 of the debts, and that the real estate was ap-
praised at $1,300.   *Held*, that the petition must be treated as an
application to sell land to pay debts generally, and not as an
application to sell to pay purchase money liens. *Held*, also, that a
finding on the petition that the allegations were true, and that
the lands "were liable as assets for the payment of the debts" of
the estate, and that "it was necessary to sell the land as in the
petition prayed for for the payment of the debts against said de-
cedent's estate" can not be construed as a finding that the lands
were liable for the payment of the purchase money.   *pp. 365-377.*

SAME.—*Sale of Real Estate to Pay Debts.*—*Childless Second Wife.*—*Es-
toppel,*—Under the laws of descent as they existed in this State
in the year 1873, children by a former marriage had no present
estate in the interest of a childless second wife, in the real estate
owned by their father at the time of his death, and could not
defend against the sale of such land for the payment of debts;
and are therefore not, by a decree of the court, estopped from
claiming one-third of the land upon the death of the second wife.
*pp. 376, 377.*

From Hamilton Circuit Court; *J. P. Kemp*, Special
Judge.

Suit by Albert Fry and others against John Lawson
and others for partition and to quiet title. From a decree
for defendants, plaintiffs appeal. *Reversed.*

*F. E. Gavin, T. P. Davis, J. L. Gavin, C. M. Gentry* and *William Booth*, for appellants.

*J. A. Roberts* and *Meade Vestal*, for appellees.

Robinson, J.—Suit by appellants for partition and to quiet title.

Error is assigned upon the conclusions of law, upon a finding of facts substantially as follows: John Stern died intestate in the year 1852, the owner in fee of the northwest quarter of the southeast quarter and the northeast quarter of the southwest quarter of section thirty-five, township nineteen north, range five east, and other lands, in all 115 acres, leaving as his only heirs his widow, Elizabeth Stern, and four children, William H. Stern, Elizabeth Wood, John Stern, Jr., and Eli Stern. Sixty acres, being thirty acres off of each forty acres, were awarded to the widow, Elizabeth, as her dower interest in the whole 115 acres. Elizabeth Stern afterward, in the year 1864, married Charles O. Fry, who afterwards purchased the interests of the four children, entered into possession, and so continued until his death, claiming to be the sole owner, subject to the dower interest of Elizabeth. Charles O. Fry died intestate in 1868, leaving surviving him his widow, Elizabeth, she being a childless second wife, and Albert Fry, William Fry, Isaac Fry, Abraham L. Fry, Oliver Fry, Melissa Shaffer, and Arena Wolf, his children by a former wife. Arena Wolf died intestate in 1894, leaving William Wolf as her only heir. On January 23, 1873, Andrew J. McKenzie, the duly appointed administrator of the estate of Charles O. Fry, deceased, filed in the court of common pleas his petition to sell the two forty-acre tracts above described, making defendants thereto the seven children of the decedent. Elizabeth Fry was not made a party. Afterwards, in the same month, the administrator filed an amended petition, alleging, among other things, that Fry died the owner in fee of the real estate, and that the two forty-acre tracts were "liable to be made

assets for the payment of debts," that decedent owed "nearly all the purchase money" for this land, at his death; that he left surviving him his widow, Elizabeth Fry, and his children; that since his death the administrator had paid about $900 on the purchase money on such real estate; that prior thereto there had come into his hands about $1,300 personal property, and also that he had received from the sale of other real estate, sold prior thereto, the sum of $1,800, and that he had paid over $3,000 of the debts which had been reported to and confirmed by the court; that it was alleged in the amended petition that Charles O. Fry died the owner of the real estate; "wherefore, he says, the widow, Elizabeth Fry, is not entitled to any interest in the real estate so purchased by Fry in his lifetime," but that she is the owner of a life estate in sixty acres thereof which she inherited from her former husband, Stern; that the amended petition also averred that there were outstanding debts amounting to $4,000 against the estate at the time of the death of Fry, and that the debts at the time of the filing of the amended petition amounted to $800 or $900; that the real estate was appraised at $1,300, subject to the life estate of the widow, Elizabeth, in the sixty acres; that there were no averments in the petition, or amended petition, in relation to unpaid purchase money or the payment of the purchase money by the administrator, except the averment before alleged. The adult defendants defaulted, and the infant defendants, Abraham L. Fry, Oliver Fry and Albert Fry, answered by guardian *ad litem;* that the court found that the "material allegations in said amended petition were true as therein alleged;" that the decedent Fry, in his lifetime, purchased the two forty-acre tracts and "that the administrator had paid about the sum of $900 on the purchase price" thereof; that the "lands were liable as assets for the payment of the debts of said decedent's estate, and that it was necessary to sell said land as in the petition

prayed for, for the payment of the debts against said decedent's estate." Afterwards, in May, 1873, the administrator sold at private sale, pursuant to the decree, the two forty-acre tracts to Jesse Wood and Elizabeth J. Wood for $1,500, which sale was approved and deed made; that the purchasers in good faith believed that the fee in such lands was being conveyed to them by such deed; that there was no finding by the court in relation to the unpaid purchase money or the payment of unpaid purchase money by the administrator, other than above set out. In April, 1872, the administrator filed his current report, showing that assets had come into his hands in the sum of $3,-537.87, which sum included rents of real estate in the sum of $75.75, and that he paid out on debts of the estate $3,176.85, leaving a balance in his hands of $361.02, which report was approved. In April, 1876, the administrator filed his final report, which was afterwards approved, showing that he had collected the purchase price of the real estate sold, in the sum of $1,500, with interest in the sum of $60; that he had collected rent of real estate in the sum of $131.27, making a total amount, including the balance of $361.02 on hand, of $2,052.29; that he had paid out on debts and expenses of administration $1,-596.77, leaving a balance of $455.52, which was paid into court, for distribution, and the administrator discharged. This amount was paid by the clerk to the heirs of Charles O. Fry, deceased, the appellants herein, in shares of $65.15 each, and the same was received and receipted for by Isaac Fry, administrator of the estate of Arena Wolf, deceased, William and Isaac Fry in person, by Melissa Shaffer, by her attorney in fact, and by William Hare, guardian of Abraham L. Fry, Albert Fry, and Oliver Fry, which money the appellants have ever since retained. No part of such money has been returned, or offered to be returned, before or since the bringing of this suit. There never was any order of court authorizing the administrator

to collect rents of the real estate. Of the $361.02 in the administrator's hands when he made his current report in April, 1872, the sum of $321 was expended by him before the time of making the sale of the real estate, leaving in his hands at that time $40.02. In 1874 Elizabeth Fry executed her quitclaim deed, conveying to Elizabeth Wood and Jesse Wood all her interest in the two forty-acre tracts. In May, 1896, Elizabeth Wood and Jesse Wood executed their warranty deed conveying the northwest quarter of the southeast quarter of the land to Evaline Lawson, one of the appellees herein, who at once took possession thereof and has since continued in open, notorious, continued, and exclusive possession thereof, claiming to be the sole and absolute owner by virtue of such conveyance. Elizabeth Wood and Jesse Wood, until the time of their conveyance, have, since the date of the deed in 1873 to them from the administrator, held the open, notorious, continued, and exclusive possession of the real estate, claiming to be the sole and absolute owners thereof by virtue of the deed of the administrator, subject only to the dower of Elizabeth, and ever since her conveyance to them they have held the real estate, claiming to be the sole owners thereof. The real estate, unencumbered by the life estate of Elizabeth Fry, was worth at the time of the sale by the administrator $30 per acre, and that subject to such life estate, each of the tracts was then worth $750. Jesse Wood and Elizabeth Wood were husband and wife, and Elizabeth Wood was the daughter of Elizabeth Fry and John Stern, her first husband, and at the time of the administrator's sale Elizabeth Wood and Jesse Wood were residing on the real estate with Elizabeth Fry. Elizabeth Fry died November 24, 1895.

As conclusions of law, the court stated that appellants have no interest in the real estate, and that the appellees are the owners thereof.

Appellants' counsel argue that the court of common pleas had no jurisdiction to order the sale of more than two-thirds of the land of Charles O. Fry; that upon his death, intestate, in 1868, one-third of the land went to his widow in fee, and at her death, in 1896, this one-third went to appellants, and that this case is governed by the ruling in *Bell* v. *Shaffer,* 154 Ind. 413.

At the time the sale of the real estate was made, the court might, upon a proper application, have authorized the administrator to sell any of the real estate of his decedent for the payment of the purchase money, or for the payment of any valid lien thereon.  2 R. S. 1852, §89, p. 269.  And at that time the court of comomn pleas had no jurisdiction to order the sale of more than two-thirds of the lands of the decedent Fry for the payment of the claims of the general creditors.  The statute in force at that time was as follows: "Section 17.  If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors; . *  *  *" "Section 24.  *  *  * Provided, that if a man marry a' second or other subsequent wife, and has, by her, no children, but has children alive, by a previous wife, the land which, at his death, descends to such wife, shall, at her death, descend to his children."  1 R. S. 1852, pp. 250, 251.

Counsel for appellees argue that as the sale by the administrator was made while the courts were construing this statute as giving to the childless second wife only a life estate, and as appellants, as Fry's children, received on distribution a part of the proceeds of such sale, that the sale was a valid sale of the fee, and that appellants are estopped from claiming any interest in the land.  What the different holdings of the courts have been, as to the interest of a childless second wife, it is unnecessary to inquire at this time, in view of the ruling announced in *Bell*

v. *Shaffer, supra,* which says: "A construction was given to these provisions of the statute in *Louden* v. *James,* 31 Ind. 69, in which it was held that when a man dies leaving surviving him a widow, who is a second or subsequent wife, by whom he has no children, but leaving children by a previous wife, the widow, as against creditors, takes the same share of his real estate in fee simple as if a first wife, and at her death that this fee simple descends to the children of the husband, free from the demands of his creditors. This decision was made May 27, 1869, while the sale in question took place October 22, 1869, so that the purchaser at that sale had before him the latest interpretation of the statute, declaring that the one-third taken by the widow was held by her in fee as against creditors, and that, at her death, it would descend to the children of the decedent. This ruling was followed in *Caywood* v. *Medsker,* 84 Ind. 520, and was there declared to have been 'the law and rule of property,' from the time it was made." So that when the sale in question, in the case at bar, was made in 1873, the interpretation of the statute gave to Elizabeth Fry, as against creditors, one-third of the land in fee, and at her death this fee would descend to the children of Charles O. Fry, free from the demands of his creditors.

In *Bell* v. *Shaffer, supra,* the petition was filed "for the sale of said real estate, to make assets for the payment of the general debts of said decedent." The widow and children were made parties. The court's order authorizing the sale was: "And the court finds that it is necessary to sell said real estate of said decedent to pay the outstanding debts against said estate. And the court does now order and direct said administrator to sell the undivided two-thirds part in value of said real estate (being exclusive of the widow's interest), to wit, lot number forty-four," etc. In that case John D. Evans purchased the lot at the administrator's sale, and, upon receiving a deed, took possession, which he held until his death, when his son,

Frederick Evans, inherited the same, and he afterwards conveyed it to appellant Bell, who bought it under the belief that he was obtaining title to the whole of the lot. The Evanses and Bell had possession of the whole of the lot. In denying the right of appellant Bell to the one-third of the lot, the court said, at page 422: "But for another and distinct reason, the claim of the appellant to the one-third of the lot must fail. The court of common pleas of Hamilton county had not jurisdiction to order the sale of more than two-thirds of the lot to make assets for the payment of the claims of general creditors." It is further held in that case that, upon proper application, the court might have authorized the administrator to sell any of the real estate of the decedent for the payment of the purchase money or any valid lien thereon, but that it was not asked to make such order, nor did it do so.

So that, in the case at bar, as the court had authority, upon a proper showing, to order the sale of all the real estate to pay a claim for purchase money, and had no jurisdiction to order the sale of more than two-thirds of the land to pay the claim of general creditors, it is necessary to determine whether the petition and order to sell, as disclosed by the special findings, were for the purpose of paying a claim for purchase money, or for the purpose of making assets generally.

It was the duty of the administrator to apply all the personal assets in his hands, if necessary, to pay liens on the land, "even to the exclusion of all general creditors." And it was also his duty to apply the proceeds of the sale of two-thirds of the deceased husband's land, if necessary, to that purpose. *Hunsucker* v. *Smith,* 49 Ind. 114; *Morgan* v. *Sackett,* 57 Ind. 580; *Sparrow* v. *Kelso,* 92 Ind. 514; *Bowen* v. *Lingle,* 119 Ind. 560; *Shobe* v. *Brinson,* 148 Ind. 285; *Lewis* v. *Watkins,* 150 Ind. 108; *Denton* v. *Arnold,* 151 Ind. 188.

In *Morgan* v. *Sackett, supra,* the above doctrine was held to apply where a mortagage, in which the wife had not joined, was given for purchase money; that a mortgage given for purchase money is superior to any rights of the widow, in favor of the mortgagee, "but in so far as the mortgage has been paid, or there are assets out of which it should be paid, either in whole or in part, the widow has, to that extent, a right therein."

The amended petition does not ask that the land be sold to make assets to pay the purchase money. It states that at his death Fry owed "nearly all the purchase money" for the land, and that since his death the administrator had paid about $900 on the purchase money, and that the land "was liable to be made assets for the payment of said debts," that the administrator had paid about $900 on the purchase money, and that the debts at the time of filing the amended petition amounted to $800 or $900. We can not presume that the debts at the time of filing the petition were for purchase money. It does not appear what amount of purchase money the decedent owed at the time of his death, and as the administrator has paid about $900 on this purchase money, we can not presume, in aid of the petition, that anything was due for purchase money when the petition was filed. The amended petition shows that more than sufficient assets had come into the administrator's hands to pay the purchase money. He had the right, under certain conditions, to pay the purchase money out of these assets. It must be presumed that he exercised this right legally. As against the widow's right to her one-third of the land, it was his duty to pay the purchase money out of assets that came into his hands, to the exclusion of general creditors. It was not directly averred in the amended petition, nor is it necessarily to be inferred from the facts stated, that any part of the purchase money remained unpaid at the time of the filing of the petition. The statement in the petition that decedent died seized of

the land, leaving a widow, "was equivalent to a statement that only two-thirds of it was liable to be made assets." *Compton* v. *Pruitt,* 88 Ind. 171. If there was a reason for converting the widow's interest into assets, it should have been stated. It is true it is averred generally that she had no interest, but no facts are averred showing that she did not have the interest of a surviving widow. The findings show she was not a party to the proceedings. The law gave her one-third of the land in fee. The court had no jurisdiction to order the sale of more than two-thirds of the land, except for certain purposes, and for such purposes the petition does not disclose that the land was sought to be sold.

Neither did the court find that it was necessary to sell the land to pay unpaid purchase money, nor did it order it sold for that purpose. The court found that the material allegations of the amended petition were true, that the administrator had paid purchase money as the petition alleged, that the lands "were liable as assets for the payment of the debts" of the estate, and that "it was necessary to sell the land, as in the petition prayed for, for the payment of the debts against said decedent's estate." This can not be construed to be a finding that the lands "are liable as assets" for the payment of purchase money, but we think it must be construed as a finding that the land should be sold to make assets for the payment of claims of general creditors.

It is true the whole of the land was ordered sold, and in this the case differs from *Bell* v. *Shaffer,* 154 Ind. 413, where the order was for the sale of two-thirds only. But in that case it is expressly held that the court of common pleas "had no jurisdiction to order the sale of more than two-thirds of the lot to make assets for the payment of claims of general creditors." We think the petition and order to sell must be treated as an application to sell lands to pay debts generally. For such purpose the court has

power to order the sale of two-thirds of the land only. As to the widow's interest, she having no notice, the findings show that the court did not have jurisdiction either of the person or of the subject-matter.

Counsel for appellees cite the case of *Myers* v. *Boyd,* 144 Ind. 496, to the effect that the interpretation of this statute, from the decision in *Martindale* v. *Martindale,* 10 Ind. 566—decided at the May term, 1858—down to the decision in *Utterback* v. *Terhune,* 75 Ind. 363—decided in 1881—was that the childless second wife took a life estate only in an undivided third of her deceased husband's lands, where he left children by a former wife. That case does so hold. And in that case the title in question was derived through an administrator's sale. But in the quotation which we have set out in another part of this opinion from the later case of *Bell* v. *Shaffer, supra,* where the title in question was derived through an administrator's sale, it is declared that it has been the rule in this State since the decision in *Louden* v. *James,* 31 Ind 69, that such childless widow, by the terms of this statute, took a fee in an undivided third of her husband's lands. While the later case of *Bell* v. *Shaffer, supra,* does not overrule nor cite the former case of *Myers* v. *Boyd, supra,* it must be held that the earlier case is overruled by the later case, and that the rule announced in *Bell* v. *Shaffer, supra,* is controlling.

Counsel for appellee also cite the cases of *Byrum* v. *Henderson,* 151 Ind. 102, *Helt* v. *Helt,* 152 Ind. 142, *Thompson* v. *Henry,* 153 Ind. 56, and *Burget* v. *Merritt,* 155 Ind. 143—each of which cases holds, as was held in *Myers* v. *Boyd, supra,* that prior to the decision in *Utterback* v. *Terhune, supra,* and back to *Martindale* v. *Martindale; supra,* the court interpreted this statute as giving the childless second wife a life estate only.

As we have concluded this case is controlled upon this point by the case of *Bell* v. *Shaffer, supra,* it being a later

case than *Myers v. Boyd, supra,* we would deem it unnecessary to notice further this apparent uncertainty as to the former interpretation of the statute, were it not for the fact that the opinion in *Burget* v. *Merritt, supra,* was written since the case of *Bell* v. *Shaffer, supra,* was decided. The Burget case does not cite, nor does it distinguish, the Bell case.

In *Martindale* v. *Martindale, supra,* the question arose in a suit for partition brought by a childless widow against the children of her husband by a former wife. In *Louden* v. *James, supra,* partition of the decedent's real estate had been made between a childless widow and the husband's children by a former marriage, and an administrator *de bonis non* applied for an order to sell the land set apart to the widow to make assets to pay debts. In the former case it was a question between the widow and children, and it was held that as against the children, the widow took an estate in one-third for life only; and in the latter case it was a question between the widow and the husband's creditors, and it was held that, as against creditors of the husband, the widow took one-third in fee. The two cases are not in conflict. Section 17, above set out, gives to the widow one-third in fee, free from all demands of creditors, and §24 directs that this interest which the widow takes free from demands of creditors shall, if she is a childless widow and there are children of her husband by a former marriage, descend to such children. In *Louden* v. *James, supra,* it is said that the case of *Martindale* v. *Martindale, supra,* is "simply deemed to settle the very question before the court, and nothing beyond."

These two cases have been frequently cited, and sometimes, perhaps, without regard to the essential difference between them. In the cases of *Haskett* v. *Maxey,* 134 Ind. 182, *Stephenson* v. *Boody,* 139 Ind. 60, *Byrum* v. *Henderson, supra, Thompson* v. *Henry, supra, Helt* v. *Helt, supra,* and *Burget* v. *Merritt, supra,* each holds that the

interpretation given this statute from the time of the decision in *Martindale* v. *Martindale, supra,* in 1858, until the decision in *Utterback* v. *Terhune, supra,* in 1881, was that the childless widow took the one-third for life only. But in none of these cases did the question of the widow's interest arise through an administrator's sale of the husband's lands to pay debts, nor was there any question as to the interest taken by the childless widow as against creditors. This accounts perhaps for the fact that in none of the above cases is *Louden* v. *James, supra,* cited or in any way referred to. So that, keeping in view the precise questions decided in *Martindale* v. *Martindale, supra,* and *Louden* v. *James, supra,* the later case of *Burget* v. *Merritt, supra,* is not in conflict with the case of *Bell* v. *Shaffer, supra.* That is, at the time the administrator's sale in question, in the case at bar, was made, the courts interpreted the statute as giving to the childless widow, as against creditors, an undivided one-third in fee; but where the question arose between the widow and children, the widow took an undivided one-third for life only.

Upon the question of estoppel: If we are right in the conclusion that the court had no jurisdiction to sell the widow's one-third, the order of the court directing the sale of the whole tract was inoperative and void as against the widow's interest, and the money that was distributed to appellants was money derived from the estate of their father. If the receipt of the money now estops them from claiming this one-third, it must be because that act ratified the sale by the administrator. But it was not possible for appellants to object to the petition and order. They had no present estate when the sale was made, and had no estate until the widow's death, long after this money was distributed to them by the administrator of their father's estate. As it was not their land when the sale was made, they could neither sell it nor ratify its sale. We think this same question is decided in appellant's favor in *Bell*

·v. *Shaffer supra,* and cases there cited.   See, also, *Bryan*
v. *Uland,* 101 Ind. 477.

As disclosed by the petition and order of sale, all the
court of common pleas could authorize the administrator
to sell was the interest of Charles O. Fry and the interest
inherited from him by his children.   The interest which
accrued to the children on the death of Elizabeth Fry was
a distinct and different interest.   The administrator's pe-
tition to sell presented no issue as to the children's interest
in this one-third, because at that time they had no interest.
As against the children, she held, practically, only a life
estate; but as against creditors, she held the fee, which,
the statute directs, shall at her death descend to his chil-
dren.

Judgment reversed, with instructions to restate the con-
clusions of law.